597 So.2d 192 (1992)
Mitchell TAYLOR
v.
STATE of Mississippi.
No. 07-KA-59552.
Supreme Court of Mississippi.
April 1, 1992.
Richard A. Smith, Leland H. Jones, III, Greenwood, for appellant.
Michael C. Moore, Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, For the Court:

I.
Mitchell Taylor has been convicted of murder in the Circuit Court of Leflore County, arising from the killing of his one-time girlfriend, Linda Johnson. Taylor appeals, presenting many questions about the fairness of his trial. Because Taylor throughout maintained the killing was an accident and because the Court instructed the jury so as to deflect its attention away from accident and toward self-defense, an issue no one raised, we reverse and remand.

II.
Mitchell Taylor and Linda Johnson were high school sweethearts. They began dating in 1984 while he was a senior and she a sophomore at Greenwood High School. Beginning in June, 1987, the romance soured, and the two ensued upon a course of bitter, highly disputed, and occasionally violent encounters, culminating on the evening of December 11, 1987.
On this December day, Johnson came by Taylor's house about 3:30 or 4:30 o'clock that afternoon and the two talked. She left and then came back about 6:30 p.m. Taylor was in the living room of the trailer, when Johnson came in and took a seat by the door. Johnson picked up a picture of one of Taylor's women friends and questioned him whether the woman was Taylor's girlfriend. Johnson left but returned within minutes and began complaining about how her family and Willie Coker, her new boyfriend, treated her. As Taylor tells it,
She got real emotional; and by that time she was over by the sofa, which she was fixing ... she was fixing to sit down but she never did, and I was just sitting there just looking at her. I said, "Linda, every time you come over here you got something to argue about." What I be doing or who I be with, that's what ... *193 that's mainly what she was arguing about. And she told me, she said, "I thought after I graduated from this nursing class, we was going to leave here and go to Jackson and stay down there, get away from my family because that's what I want to do. As long as I stay here with them, I'll never be able to do what I want to do." And I said, "Well, you can leave and go if you want to, but I won't go with you because as far as us being together I doubt if we can ever do that." And by that time, Linda  I don't know, she acted as if she was going to cry, you know, and then she said, "I'm just tired of people using me and doing me the way they want to do." And by that time she reached up under the sofa, she came up halfway about waist high with the gun and I grabbed it, grabbed the gun with both hands and I snatched with it. When I snatched, she gave a little shove and I went back over the sofa, my leg hit the sofa and the... and the ... and the end table, and I fell and the gun went off; and when I knowed anything, Linda was laying on the floor and I went over to her and I picked up the phone, and I don't know, I just ... just couldn't dial for help or nothing. I don't know where David and Teresa come from. When I knew anything they was behind me. I laid the gun on the T.V., I got it and laid it on the T.V., and, you know, I just... . Linda, she was dead. She was just, you know, just blood on the floor, and all of a sudden she just ... looked like she just stopped, fixing to stop breathing; and at one time it looked like she did, and I gave her mouth to mouth resuscitation and she started ... breathing again,... and after that, all I can remember is stuff, you know the Polices coming and everybody coming in....
Taylor and his sister Brenda rode to the hospital in the ambulance with Johnson.
Later that evening, Taylor was taken into custody and told Detective Henry Burden what had happened and that Johnson's death had been an accident. According to Detective Burden,
... And I asked him what happened over there at the trailer and Mitchell told me that he and Linda, who was his girlfriend, had been arguing, I believe he said all day long, and that he was supposed to go to work at 8:00 that night and she had thought that . .. apparently what he said that she thought he wasn't going to work and they had gotten into an argument, a pretty heated discussion, and said that he ... he had his pistol under the seat, one of the cushions of the couch, and he said that Linda ran towards the couch where the pistol was, said she knew where the pistol was, and he ran also and she came up with the pistol and he was in the process of trying to take it away from her or they was wrestling over the pistol, the pistol went off, and the bullet struck her in the head.
According to Detective Burden, Taylor slapped Johnson's hand holding the gun, and that was when the gun went off. However, Detective Burden did not remember Taylor saying he was certain whether the gun went off before it hit the floor or after.
Wayne Pittman, an officer with the Greenwood Police Department, testified that he talked with Taylor on the morning of December 12, the day after Johnson was shot. Officer Pittman remembered for the jury what Taylor had told him.
Well he said basically that he and Linda Johnson had been arguing. He had to go to work at, I think, 8:00 p.m. he said and basically that is what the argument was about, that she believed that he wasn't going to work, that he was going to see another woman. He stated that he had a pistol on the couch and that he, because of the argument and because of her temper, that he was going to put the pistol up. He said that when he got the pistol she grabbed his arms and they tusseled over the pistol and the pistol went off.... He stated that the pistol was in his hand at the time that it went off.
Throughout his trial, Taylor stuck to his story and maintained the killing was an accident. When time came to consider instructions to the jury, the Circuit Court *194 allowed Taylor an instruction presenting his accident theory.[1] After passing on defense requests for jury instructions, the Court turned to the prosecution's requests, whereupon controversy centered on Instruction S-2, which reads as follows:
The Court instructs the Jury that while malice aforethought is a necessary ingredient in the crime of murder, still malice aforethought means the same as killing a human being with the deliberate design to effect the death of the person killed; and, this malice aforethought and deliberate design do not necessarily mean hatred and ill will, and need not exist for and definite time, not for days or hours or even minutes, but if the deliberate design to kill is formed prior to the time the fatal wound was made, this is sufficient premeditation and deliberation to constitute the offense of murder, unless the Jury entertain a reasonable doubt as to whether or not the killing was done in necessary self defense. (Emphasis supplied)
Defense counsel objected to this instruction on a number of grounds. For present purposes, it is important that Taylor
object[ed] to that portion of it, and at the end of the instruction where it says "unless the jury entertains a reasonable doubt as to whether or not the killing was done in necessary self-defense" [on grounds it] is leaving out the defense of an accident; ... .
While arguing regarding another feature of the instruction, one of the prosecuting attorneys stated:
From the State's side of view, he clearly testified that it was an accident because the gun discharged as he was falling back. He  It's just an accident or murder, in the State's opinion.
The Court agreed: "Well, that's the way I see it. I believe ... I believe this is right out of cases. .. ."
The entire colloquy concluded as follows:
BY MR. WITTY (Taylor's defense counsel): It does leave out the defense of accident, doesn't it, regardless of the fact you've already ruled on... .
BY THE COURT: But if the deliberate design to kill is formed. Certainly this leaves accident, but it says but if the sufficient premeditation unless the jury.... I am going to give S-2.

III.
Considered by itself, Instruction S-2 describes for the jury notions of malice aforethought and deliberate design, but concludes with an unequivocal declaration that, if the deliberate design to kill is formed before the shooting, the offense is murder,
unless the jury entertained a reasonable doubt as to whether or not the killing was done in necessary self-defense.
The problem is not that necessary self-defense is not a defense to a charge of murder. It is, though we label the defense justifiable homicide. Miss. Code Ann. § 97-3-15(1)(e) and (f) (Supp. 1987). The problem, rather, is that Taylor made no claim of self-defense. No one offered evidence of self-defense. Taylor's theory of defense throughout was one of accident or excusable homicide. See Miss. Code Ann. § 97-3-17(b) (Supp. 1987). The instruction, considered by itself, deflects the jury's attention from accident as the defense. One cannot read the instruction without forming the opinion that the principal defense to be considered is self-defense.
The problem is exacerbated when we read Instruction S-1, which tells the jury it should find Taylor guilty if it finds that he killed Linda Johnson of his malice aforethought "without authority of law and not in necessary self-defense."[2]
*195 Our well-settled rule is that on appeal we consider complaints of error in jury instructions by reading the instructions as a whole. All instructions "are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error." Laney v. State, 486 So.2d 1242, 1246 (Miss. 1986). Not every instruction need cover every point of importance, so long as the point is fairly presented elsewhere. It is against the backdrop of these considerations that we have considered carefully whether Instruction D-8 cures the error. More specifically, we have considered whether Instruction D-8, read together with S-2 (and S-1), may be read to instruct the jury that it should acquit upon the prosecution's failure to prove "malice aforethought, deliberate design, premeditation," and the like, and that the jury should do this if the killing occurred "in the struggle between the defendant and the deceased for possession of the pistol [and] the fatal shot was unintentionally fired."
Candor requires concession that a careful linguist reading these instructions together eight or ten times might draw this conclusion. We might say that the prominent place given "necessary self-defense" not only in S-2, but also in S-1, is of no moment because there was no evidence of self-defense, and Mitchell Taylor made no claim of self-defense. Our concern is our doubt this is the reading an average jury would give the instructions.
In a wide variety of contexts, we presume that the jury takes seriously what it is told by the court. See, e.g., Folk v. State, 576 So.2d 1243, 1250 (Miss. 1991); Dennis v. State, 555 So.2d 679, 682-83 (Miss. 1989); West v. State, 519 So.2d 418, 423 (Miss. 1988); Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987); Martin v. State, 415 So.2d 706, 708 (Miss. 1982). Because of this, we have repeatedly cautioned trial judges against interjecting before the jury impermissible or otherwise extraneous matters. A trial for murder is the most serious matter any court may entertain. Where, as here, the evidence is somewhat circumstantial and inconclusive, and where the Court has substantially instructed the jury that it consider a matter extraneous to the process, the risk of a misdirected verdict becomes intolerably high. We presume that the case was heard before a jury of intelligent laymen. Still, instructions should not test whether the jury may run successfully a course in labyrinthian logic. In the end, we cannot help but accept that placing the (non)issue of self-defense before the jury, and giving it a place of prominence in excess of that given the defense of accident, resulted in the substantial risk that the jury misapprehended the law in the course of its deliberations. For these reasons, the verdict may not stand. We reverse and remand for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and McRAE, JJ., concur.
BANKS, J., dissents with written Opinion.
PITTMAN, J., not participating.
BANKS, Justice, dissenting:
I must respectfully dissent. The "defect" in the instruction on which this reversal is grounded is first, not a defect at all, and second, not the subject of an objection by the defendant at trial.
Taylor's only objection to the state's substantive murder instruction was not that it required the state to negate self-defense, but rather that it failed to require the state to negate accident. The trial court correctly reasoned that requiring the jury to find that the killing was committed with "deliberate design to effect death" is sufficient *196 to the defense of accident. I can fathom no reason for confusion on the part of the jury because of the additional requirement that the the state negate self-defense. This is especially so where, as here, the facts lend themselves to defenses of both self defense and accident, an accidental killing while engaged in self defense, if you will. See, e.g. Day v. State, 589 So.2d 637, 641-642 (Miss. 1991). I would affirm.
NOTES
[1] Instruction No. D-8, given to the jury, reads as follows:

The Court instructs the jury that if you believe from the evidence that the defendant did, without any design or deliberation to cause the death of the deceased, secure possession of the pistol, and in the struggle between the defendant and the deceased for possession of the pistol, the fatal shot was unintentionally fired, then the defendant is not guilty of murder.
[2] Instruction S-1 in its entirety reads as follows:

The Court instructs the Jury that if you believe from the evidence beyond a reasonable doubt that on December 11, 1987,
1. the deceased, Linda Johnson, was a living person, and
2. the Defendant, MITCHELL TAYLOR, did wilfully and of his malice aforethought, that is deliberate design, shoot and kill Linda Johnson,
3. without authority of law and not in necessary self defense.
then you shall find the Defendant, MITCHELL TAYLOR, guilty of murder.