## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01308-SCT

*GARY TAYLOR a/k/a GARY L. TAYLOR a/k/a GARY LYNN TAYLOR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/1999 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVEN E. FARESE, SR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/28/2001 |
| MOTION FOR REHEARING FILED: | 7/27/2001; denied 9/27/2001 |
| MANDATE ISSUED: | 10/4/2001 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Gary Taylor comes before this Court appealing from the judgment of a DeSoto County Circuit Court finding him guilty of one count of murder and one count of causing the death of an unborn quick child. On the first count, he was sentenced to life imprisonment. On the second count, he was sentenced to a consecutive twenty (20) year term. Taylor filed his notice of appeal to this Court raising three issues.

**I. WHETHER THE VERDICTS OF THE JURY WERE AGAINST THE WEIGHT OF THE EVIDENCE?**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING DEFENDANT'S JURY INSTRUCTION D-4?**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL?**

## FACTS

¶2. On January 19, 1997, Teresa Strachan and her unborn child both died when Teresa suffered a gunshot wound to the head. Strachan's body was discovered by Adrian Lewis, an officer with the Hernando Police Department. Officer Lewis was dispatched to 2170 East Parkway, Hernando, on January 19, 1997. When he arrived there at 8:51 a.m., he discovered Strachan's body lying in the front doorway with a gun shot wound to the forehead.

¶3. Eddie Owen, an employee of the Hernando Ambulance Service, also responded to the Strachan home that day. When Owen entered the house, he discovered Strachan lying inside the door with a gunshot wound to her forehead. Strachan had also been shot in "the left shoulder," and she had "some black matter on her forehead" and on her hand. Upon determining that neither she nor the fetus had vital signs, Owen called the coroner, and the patrolman called the investigator.

¶4. DeSoto County Coroner Jeff Pounders arrived on the scene at approximately 10:00 that morning. Pounders testified that Strachan had what appeared to be a "contact wound" to her forehead and a "contact wound to her left upper chest in her shoulder area" and a superficial wound to her right hand and fingers. He also testified, "[i]t appeared to be gun powder on her forehead."

¶5. The police had been called to the Strachan home earlier that morning. Detective Shane Ellis of the Hernando Police Department testified that in the early morning hours of January 19, 1997, he had arrived at 2170 East Parkway in Hernando, where another officer, Kimmons Gray, was already on the scene. Gray had retrieved a weapon and was "talking to Mr. Taylor" while Officer Ellis "took Teresa to the back bedroom to separate them . . . ." Ellis testified that Tommy Hall, Gary Taylor, Teresa Strachan and a small child were present at the residence. The officers determined that a shot had been fired but "they did not come up with any physical evidence of a disturbance." Gray and Ellis concluded that this was not "any type of domestic situation whatsoever," and after an informal conversation with Strachan and Taylor, the officers "returned the firearm back to Teresa."

¶6. At approximately 9:00 a.m. that same day, Ellis was again dispatched to the home and, when he arrived, he saw Teresa Strachan lying on the floor. Ellis testified he also observed "two bullet holes, one on the north side of the door towards the bottom and one on the south side of the door towards the bottom."

¶7. Lieutenant Bob Reyna of the Hernando Police Department also participated in the investigation of the scene of the shooting. Reyna testified that he traveled to the Hardeman County Sheriff's Department in Bolivar, Tennessee, where Gary Taylor had been taken into custody and where Reyna received a Wesson .357 magnum from the sheriff there, together with three live rounds and three spent rounds.

¶8. Owen, Pounders, Ellis and Reyna were each called as witnesses for the State. The State also called Sheriff Jeter of the Hardeman County Sheriff's Department. Jeter became involved after a friend of Taylor's, Tommy Smithson (a resident of Hardeman County), persuaded Taylor to turn himself in to the police and his wife Janice contacted Jeter who took Taylor into custody. Smithson gave Jeter a handgun he had gotten from Taylor. Sheriff Jeter testified as to an admission by Taylor to the effect of, " I killed her. I can't believe I did that." Smithson was also called to testify by the State. He testified from memory and from a statement he gave to the police the day Taylor was taken into custody in which he described other admissions by Taylor. Taylor had told Smithson that he and Strachan argued, struggled over the gun and that he shot her. In his statement, Smithson also related a statement by Taylor that he "shot Teresa . . . and she was nine months pregnant." The State also called Bruce McKeen, a neighbor of the Smithson's; Strachan's mother, Diane Caraway; Tommy Hall, a friend of Taylor; Strachan's obstetrician-gynecologist, Dr. Hai Dang and Taylor's mother, Ruth Helton. Dr. Steven Timothy Hayne, who had performed the autopsy on Strachan's body, was accepted by the court as an expert in the field of forensic pathology and was the prosecution's final witness.

¶9. The defense called six witnesses. The first witness was Kerry Taylor, the defendant's ex-wife. In addition, Jason Motz, a customer of Taylor; Jacqueline Helton, Taylor's half-sister; Jim Franks, Taylor's

former attorney; Dr. Amanda Ruffin, a clinical psychologist, and Dr. Allen Battle, who was certified by the court as an expert in the field of clinical psychology, all testified for the defense.

¶10. The State called two rebuttal witnesses. The first was Dr. Reb McMichael, a board certified psychiatrist with added qualifications in forensic psychiatry. The second was Paula Strachan, the victim's sister.

¶11. The jury deliberated and returned a unanimous verdict of guilty against Taylor on one count of murder and one count of causing the death of an unborn quick child. On the first count, he was sentenced to life imprisonment and on the second, to a consecutive twenty-year term. Aggrieved with the judgment below, Taylor appeals to this Court, raising three issues.

## DISCUSSION

### I. WHETHER THE VERDICTS OF THE JURY WERE AGAINST THE WEIGHT OF THE EVIDENCE?

¶12. Taylor argues that both the counts on which he was convicted should have resulted in acquittals because there was no evidence of intent. Taylor contends that there is no proof that he had the full awareness of what he was doing and that he calculated, planned and contemplated the consequences of any act or acts he may have committed.

¶13. In determining whether the evidence is legally sufficient to sustain the verdict, this Court must consider the evidence in the light most favorable to the State and accept as true "[a]ll evidence supporting or tending to support the verdict, as well as all reasonable inferences that may be drawn from the evidence . . . ." *Harrell v. State*, 583 So.2d 963, 964 (Miss. 1991). If the evidence is such that fair-minded jurors might have reached different conclusions, the verdict must be allowed to stand. *Ashford v. State*, 583 So.2d 1279, 1281 (Miss. 1991) (quoting *Butler v. State*, 544 So.2d 816, 819 (Miss. 1989)). "Matters regarding the weight and credibility to be accorded evidence are to be resolved by the jury." *Fisher v. State*, 481 So.2d 203, 212 (Miss. 1985).

¶14. When presented with a challenge to the weight of the evidence, this Court "must accept as true the evidence favorable to the state." *Van Buren v. State*, 498 So.2d 1224, 1229 (Miss. 1986). "A new trial will not be ordered unless this Court is convinced that "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983).

¶15. Count 1 of the indictment charged Taylor with "deliberate design" murder. Taylor argues that there is no proof in the record that Taylor acted with "deliberate design" to effect the death of Strachan. This Court has held that the term "deliberate design" is interchangeable with "malice aforethought" declaring that "[i]t has long been the case law of this state that malice aforethought, premeditated design, and deliberate design all mean the same thing." *Tran v. State*, 681 So.2d 514, 517 (Miss. 1996)(quoting *Windham v. State*, 602 So.2d 798, 801 (Miss. 1992)). "Definitionally, we regard 'malice aforethought' and 'deliberate design' as synonymous." *Blanks v. State*, 542 So.2d 222, 227 (Miss. 1989) (citing *Fairman v. State*, 513 So.2d 910, 913 (Miss. 1987); *Johnson v. State*, 475 So.2d 1136, 1139 (Miss. 1985); *Lancaster v. State*, 472 So.2d 363, 367 (Miss. 1985)).

¶16. Taylor argues the record is void of proof "that Taylor had the full awareness of what he was doing and

that he calculated, planned and contemplated the consequences of any act or acts he may have committed." Taylor cites **Windham v. State,** 520 So.2d 123, 126 (Miss. 1987), in arguing that "the word 'deliberate' always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences."

¶17. Taylor also disputes the validity of Jury Instruction 9, which instructed the jury that it must find beyond a reasonable doubt that Taylor killed Strachan and:

> that he did so with the premeditated and deliberate design to effect the death of Teresa G. Strachan with malice aforethought or in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Teresa G. Strachan ....

¶18. Taylor's reliance on **Windham** to dispute this instruction is misplaced. The instruction deemed erroneous in **Windham** included "at the moment" language that allowed for a deliberateness that developed instantaneously with the killing. Jury Instruction 9 does not include such language. In addition, this Court noted in **Windham** that "deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." 520 So.2d at126; *See also* **Gossett v. State,** 660 So.2d 1285, 1293 (Miss. 1995). Thus, Jury Instruction 9 is consistent with the precedent of this Court.

¶19. Taylor also seeks to find refuge in the **Weathersby** rule which this Court has enunciated as follows:

> [W]here the defendant or the defendant's witnesses to the homicide are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

**Weathersby v. State**, 165 Miss. 207,147 So. 481, 482 (1933).

¶20. The State contends the **Weathersby** rule is of no benefit to Taylor due to later cases that developed exceptions such as the following:

> If the defendant's version of the killing is reasonable, it must, as a matter of law, be accepted as true, unless 'substantially contradicted in material particulars by a credible witness, . . . or by the physical facts or by facts of common knowledge. **Also, Harveston v. State**, 493 So.2d 365 (Miss. 1986). A defendant who met the Weathersby Rule would be entitled to a directed verdict of acquittal.

> As stated in **Weathersby**, and many of our subsequent decisions, this rule has no application where the defendant's version is patently unreasonable, or contradicted by physical facts. Where the defendant is the only eyewitness to a slaying, his version must be reasonable and credible before he is entitled to an acquittal under the rule.

> And, there is still another circumstance which still precludes the application of the **Weathersby** rule, and that is where the accused, following the slaying, gives conflicting versions of how the killing took place, or initially denies the act.

**Blanks v. State**, 547 So.2d 29, 32 (Miss. 1989)(citations omitted).

¶21. Thus, the *Weathersby* rule is not applicable because Taylor gave conflicting accounts of the shooting. Also, his claim that the shooting was an accident is not credible in light of the physical evidence, in particular the three contact wounds. Because the *Weathersby* rule does not apply, there is a presumption that "the unexplained killing of one person by another is presumed to be malicious, and therefore murder." *Blanks*, 547 So.2d at 33.

¶22. Taylor also argues that the State failed to prove the concluding requirement of Jury Instruction 9 that the defendant had the mental capacity to "realize and appreciate the nature and quality of his acts and to distinguish between right and wrong at the time he committed these acts . . . ." This language is a statement of the *M'Naghten* Rule which is the long-standing test for insanity in Mississippi. "Simply stated, the test for insanity is whether the defendant was unable to distinguish right from wrong at the time the act was committed." *Tyler v. State*, 618 So.2d 1306, 1309 (Miss. 1993) (quoting *Roundtree v. State*, 568 So.2d 1173, 1181 (Miss. 1990)).

¶23. In arguing that he was delusional and could not distinguish between right and wrong, Taylor points to the testimony of Patrolman Shane Ellis who was dispatched to the residence a few hours prior to the shooting. Ellis testified that Taylor had fired a gun inside the home because "he thought he saw something that he didn't see." Taylor also told his mother and his sister that he had shot at someone coming down from the attic. There was also testimony from Thomas Smithson and Thomas Hall that Taylor may have been delusional or paranoid. Both the prosecution and the defense rely on the testimony of the State's psychologist, Reb McMichael who stated that Taylor was mentally disturbed but that he was not insane under the *M'Naghten* test. Taylor argues there was enough doubt raised concerning Taylor's sanity that the burden should have been shifted to the State. "The defendant is presumed sane until a reasonable doubt of his sanity is created. When such a doubt arises, the burden is then placed upon the state to prove, beyond a reasonable doubt, the defendant's sanity." *Davis v. State*, 551 So.2d 165, 173 (Miss. 1989).

¶24. However, the question of a defendant's sanity is for the jury, which "may accept or reject expert and lay testimony." *Tyler v. State*, 618 So.2d at 1309. "Given the fact that there is testimony on both sides of the issue - - a jury's verdict on the insanity issue is essentially conclusive and unreviewable." *Gerlach v. State*, 466 So.2d 75, 79 (Miss. 1985). This Court has recognized that "institutional and practical considerations mandate that in insanity defense cases, perhaps more than any other, a jury's verdict ought to be given great respect and deference." *Groseclose v. State*, 440 So.2d at 301. In this case, there is not a sufficient basis for disturbing the decision of the jury.

¶25. Taylor raises essentially the same issues concerning the conviction under Count Two. Thus, our conclusion is the same. Taylor's first issue is without merit.

### II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING DEFENDANT'S JURY INSTRUCTION D-4?

¶26. Taylor next argues the trial court erred in refusing to grant Jury Instruction D-4, a circumstantial evidence instruction which read as follows:

> The court instructs the jury that if there be a fact or circumstance in this case susceptible of two interpretations, one favorable and the other unfavorable to the accused, when the jury has considered such fact of [sic] circumstance with all other evidence, there is a reasonable doubt as to the correct interpretation, then you, the jury must resolve the doubt in favor of the accused, and place upon such

fact or circumstance the interpretation most favorable to the accused.

¶27. Taylor argues the instruction is appropriate because this Court has held such a circumstantial evidence instruction "must be given unless there is some type of direct evidence such as eyewitness testimony, dying declaration, or confession or admission of the accused." *Deal v. State*, 589 So.2d 1257, 1260 (Miss. 1991). The trial court, however, disagreed noting that "there's been no denial of the shooting." The State argued there were admissions by the defendant that constituted direct evidence. *Manning v. State*, 735 So.2d 323, 338 (Miss. 1999); *Gray v. State*, 728 So.2d 36, 76 (Miss. 1998). Taylor's second issue lacks merit in that the State's case did not rest solely on circumstantial evidence.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL?

¶28. Taylor argued the trial court should have granted the defendant a directed verdict or a new trial for the following reasons:

1. The verdict was contrary to law;

2. the verdict was contrary to the evidence;

3. the verdict is strongly against the weight of the evidence;

4. the trial court erred in granting and refusing jury instructions;

5. the trial court erred in failing to grant a directed verdict in favor of the defendant at the close of the State's case; and,

6. the trial court erred in not granting a mistrial following improper remarks by the prosecutor during closing argument.

The focus of this issue is on the statements by the Assistant District Attorney in the closing argument. The prosecutor stated:

Defense says if that's not insane, I don't know what is. Well, I'll tell you what was insane. Down in Panola County when a man took his two year old baby, took a knife, cut it out and held it there because it was possessed with demons. And he didn't run off. He didn't go get some money for a lawyer.

The defense objected to the comments on the basis of facts not in evidence. The trial judge instructed the prosecutor to "move on," and the prosecutor did as instructed. Taylor failed to obtain a ruling on his objection and therefore is barred from raising the objection now. *Cole v. State*, 525 So.2d 365, 369 (Miss. 1987). Taylor is also procedurally barred from raising the grounds on appeal that the prosecutor's statements concerning running off and hiring a lawyer constituted an impermissible reference to Taylor's failure to testify. This ground was never raise in the trial court. *Gayten v. State*, 595 So.2d 409, 413 (Miss. 1992). Consequently, Taylor's third assignment of error is wholly without merit.**CONCLUSION**

¶29. The jury's decision was reasonable and based on sufficient evidence. Also, the trial court judge did not err in refusing Taylor's requested circumstantial evidence instruction since the State's case did not rest

entirely on circumstantial evidence. Nor did the trial court judge err in denying Taylor's Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial. The complained of comments by the prosecutor were dealt with properly by the trial judge, and Taylor is procedurally barred from raising the issue on appeal. The judgment of the DeSoto County Circuit Court is affirmed.

¶30. **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF CAUSING THE DEATH OF AN UNBORN QUICK CHILD AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I. APPELLANT IS GIVEN CREDIT FOR 885 DAYS TIME SERVED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR.**