THOMAS, J.,
for the court.
¶ 1. Purvis Jones was convicted in the Circuit Court of Hinds County of manslaughter and sentenced to serve a term of twenty years with three years suspended. Aggrieved, he asserts the following issues:
I. THE TRIAL COURT ERRED IN REFUSING TO DISCHARGE JONES UNDER THE DOCTRINE AFFIRMED IN WEATHERSBY V. STATE.
II. THE TRIAL COURT ERRED IN DENYING JONES’S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL.
III. THE TRIAL COURT ERRED IN REFUSING AN INSTRUCTION ON EXCUSABLE HOMICIDE.
Finding no error, we affirm.
FACTS
¶ 2. In the very early hours of November 22, 1998, appellant Purvis Jones and his brother Johnny were at Mills Restaurant and Lounge on Billy Bell Road in rural Hinds County. 'Shortly after they arrived, Columbus McDonald, Jr. entered the lounge with Jones’s sister, Pam Wilson Williams, Ruby Smith, and Emma Parks. Problems first began when another man asked Pam to dance. McDonald, who apparently was living with Pam at the time, grabbed the man on his shoulder and said some words to him. While in the men’s room, Purvis Jones overheard the man who had asked Pam to dance talk about “wasting” McDonald. McDonald also be *23 came angry with Pam and poured a drink on her.
¶3. There was testimony at trial that McDonald went outside to Pam’s car and got her .38 caliber handgun. Purvis testified that he sensed trouble was coming. According to Purvis, McDonald had a propensity for violence and had beaten Pam only two weeks prior and had also fired a gun at her on a public street. Purvis therefore decided to urge the others to leave. When they would not leave, Purvis stepped outside the club and called for his stepfather to come pick him up. Purvis also gathered his belongings, including a pistol, from his brother Johnny’s car.
¶4. Shortly after Purvis went outside, McDonald came outside. According to Purvis, McDonald bumped into him on purpose. Purvis testified that he felt McDonald’s gun when he bumped into him, although he told investigators later that night that he did not know if McDonald was armed. Purvis told McDonald he wanted no trouble, and McDonald left in Pam’s car. A few minutes later, Purvis’s brother, Johnny, came outside to try and get Purvis to stay with him and the others. Johnny was apparently very intoxicated. They began to argue about whether Purvis should stay or go, and their argument led to a “tussle” which became a struggle on the ground.
¶ 5. At some point during this struggle, McDonald arrived and pulled Purvis off of his brother. McDonald and Purvis began to struggle. Purvis reached for his gun, brought it up, and according to his testimony, the gun accidentally discharged. The bullet struck McDonald and he fell to the ground. Purvis testified that he was confused by the situation and did not realize initially that he had fired the shot. An ambulance was called, and there was testimony that several people tried to render aid to McDonald.
¶ 6. Purvis’s stepfather arrived and was told what had occurred. Although it was not initially told to investigators, there was testimony at trial that Pam tossed her .38 caliber gun, which McDonald had allegedly had on his person into the back of the stepfather’s truck. She surrendered the gun to the police the following day in a plastic bag. By the time the police arrived on the scene, McDonald was dead. Purvis admitted shooting McDonald but claimed that it was unintentional. Investigators found no other weapons but the one that Purvis owned. Pam asked the investigators to look through her car for her .38 caliber gun. They did so and found some cartridges, but the search did not produce a gun.
¶ 7. At trial, a pathologist testified that McDonald had been shot at a slight downward trajectory from a distance greater than eighteen inches. He testified that this was consistent with both McDonald and the person who fired the shot being in a standing position with a distance greater than eighteen inches between them. A forensic scientist also testified at trial that gunshot residue was found on Purvis’s hands. Another forensic scientist testified that the fatal shot had been fired by Pur-vis’s gun.
¶ 8. Purvis testified in his own defense. During his testimony, he contradicted some of the statements he gave to the investigators at the scene. He testified that he felt the gun and knew that McDonald was armed, and that McDonald had begun choking him when he was struggling with his brother. Purvis also testified that he saw McDonald’s gun just before he killed McDonald. He also testified that he was getting up off the ground when he fired up at McDonald. He also testified that approximately forty-five minutes had passed before medical assistance for McDonald arrived. On cross-examina *24 tion, Purvis stated that he did tell the investigators about the gun, although it was not in the statement he signed. He also testified that he did not tell the investigator about the other facts because the investigator did not ask.
¶ 9. Pam Wilson Williams also testified at trial. She testified that McDonald was a violent man, even though she had lived with him for most of the time they were together. She testified that she saw McDonald point a gun at Purvis, and that it was after this that Purvis went for his gun. Although she did not take McDonald to the hospital, she did state that she put the gun that he had in the back of Purvis’s stepfather’s truck because someone had said to get rid of any guns. She testified that she did not tell police about this because she was scared. She admitted to asking one of the investigating officers to search her car for her gun.
¶ 10. The day following the shooting, she called the investigator and told him that she had the gun which McDonald had allegedly pointed at Purvis. When she was taken in for a statement regarding the gun, she succumbed to a fit of nausea and was unable to make a statement. She testified that she never told investigators that McDonald was threatening her brother with a gun, because she was told that she did not have to talk and decided to wait until trial to do so.
¶ 11. Several other witnesses also testified for the defense. Ruby Smith testified that she had seen McDonald in the lounge with a gun, but unlike Pam who saw McDonald put the gun in his coat or jacket, Smith testified that the gun was in his pants. Johnny Jones testified that he did not see McDonald with a gun, but he admitted that he was under the influence of alcohol at the time. After McDonald interrupted his struggle with his brother, Johnny removed himself from the immediate area and did not see what happened, although he heard the gunshot. Johnny admitted that he “might” have handled his gun that night, but denied firing any weapon. He apparently got rid of his weapon when he heard the advice to get rid of any guns.
¶ 12. The State brought the chief investigator back to testify. Again, he testified that Purvis did not tell him that he had seen a gun on McDonald at the time of the shooting. The investigator testified that Pam told him at the scene that she had known McDonald was going to get her gun out of the car when he left the club. However, she did not tell him that McDonald was armed at the time Purvis shot him. When Pam gave the investigator her .38 caliber gun the following day, she told him that she was upset when McDonald was shot and that she took the gun out of his pocket after he was shot. She refused to give a written statement as did Johnny Johnson who was present when the investigator was given the gun.
ANALYSIS
I. DID THE TRIAL COURT ERR IN REFUSING TO DISCHARGE JONES UNDER THE DOCTRINE AFFIRMED IN WEATHERSBY V. STATE?
¶ 13. Purvis Jones asserts that he was entitled to an acquittal due to the Weathersby rule. The Weathersby rule is as follows:
[W]here the defendant or the defendant’s witnesses to the homicide are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
*25 Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933). According to Purvis, although his witnesses described the events in slightly different terms, their combined stories show that he was not the aggressor and was not at fault. Therefore, he asserts that his version of the facts should be accepted and that he should be acquitted.
¶ 14. In Taylor v. State, 795 So.2d 512 (Miss.2001), the Mississippi Supreme Court held that the Weathersby rule did not apply if the accused, following the slaying, gave conflicting versions of how the killing took place. Taylor, 795 So.2d at 517(¶ 20) (citing Blanks v. State, 547 So.2d 29, 32 (Miss.1989)). This is similar to the situation here. Purvis’s testimony about McDonald having a gun contradicted his statement to investigators the night of the shooting. Purvis’s sister, Pam Wilson Williams, also changed her story at trial.
¶ 15. The State provided evidence that contradicted the defense account, including a pathologist who testified that McDonald could not have been shot on the ground due to the trajectory of the bullet that killed McDonald. This contradiction is enough to make Purvis’s guilt an issue that was proper for the jury to consider. Turner v. State, 796 So.2d 998, 1002(¶ 14) (Miss.2001). In Turner, a pathologist provided testimony “regarding the lack of gunpowder residue on the deceased and the trajectory of the shotgun blast which materially contradicted Turner’s version of the shooting.” Id. The court held that this was enough for the jury to consider the matter and to overcome the Weathersby rule. Id.
¶ 16. Although the State did not have an eyewitness, the above reasons are enough to deny an acquittal based on the Weathersby rule. This issue is without merit.
II. DID THE TRIAL COURT ERR IN DENYING JONES’S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL?
¶ 17. Purvis Jones argues that the trial court erred in denying his motion for judgment notwithstanding the verdict or for a new trial. Purvis argues that even without the Weathersby rule, a reasonable juror could not have concluded that he intentionally shot McDonald and therefore the jury in his case came to the wrong conclusion. Purvis never denied shooting McDonald. He told investigators initially that he did not intend to fire and that the shooting was an accident. At trial, he claimed that McDonald was exhibiting a weapon and that he thought that McDonald might shoot him.
¶ 18. In Ford v. State, 753 So.2d 489, 490(¶ 8) (Miss.Ct.App.1999), we held that:
[I]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
(citing Danner v. State, 748 So.2d 844, 846 (¶ 7) (Miss.Ct.App.1999)). See also Turner v. State, 726 So.2d 117, 125(¶29) (Miss.1998); Herring v. State, 691 So.2d 948, 957 (Miss.1997); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). “Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.” Hughes v. State, 724 So.2d 893, 896(¶ 14) (Miss.1998). “In determining whether a jury verdict is against the overwhelming weight of the evidence, the court accepts as true the evidence favorable to the State.” Wetz v. State, 503 So.2d 803, 812 (Miss.1987). See *26 also McClain v. State, 625 So.2d 774, 781 (Miss.1993); Van Buren v. State, 498 So.2d 1224, 1229 (Miss.1986). It has also been established that “the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness.” Meshell v. State, 506 So.2d 989, 991 (Miss.1987). See also Hilliard v. State, 749 So.2d 1015, 1017(¶ 9) (Miss.1999); Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979).
¶ 19. In the case at hand, evidence was presented that Purvis had seen McDonald pour a drink on his sister inside the lounge. McDonald also intervened in a fight between Purvis and his brother Johnny. In some accounts, McDonald did this by choking Purvis. Purvis was able to free himself from McDonald’s grasp, and upon retrieving a loaded pistol from his trousers, he shot McDonald. “Heat of passion” manslaughter is defined as the following:
A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Simmons v. State, 805 So.2d 452, 473 (¶ 31) (Miss.2001); Tait v. State, 669 So.2d 85, 89 (Miss.1996) (quoting Buchanan v. State, 567 So.2d 194, 197 (Miss.1990)). This state of mind can result from a fight. Green v. State, 631 So.2d 167, 174 (Miss.1994).
¶ 20. The question of whether Purvis killed McDonald by accident as he first told investigators, in self-defense as he testified at trial, or out of anger or “heat of passion” is a question for the jury. Green, 631 So.2d at 174. The court did not err in refusing to grant Purvis’s motions for a judgment notwithstanding the verdict or for a new trial. This issue is without merit.
III. DID THE TRIAL COURT ERR IN REFUSING AN INSTRUCTION ON EXCUSABLE HOMICIDE?
¶ 21. Purvis asserts that the court erred in denying his request for a jury instruction which set out “accident or misfortune” rather than one which combined “accident and misfortune” with self-defense. The jury instruction that was accepted by the court below was based on the testimony given at trial. During his testimony, Purvis stated that he saw that McDonald was armed and pulled his gun out. It then happened to go off. The instruction accepted by the court therefore combined the two elements and was more closely based on the testimony than either instruction submitted by Purvis. In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. Fielder v. Magnolia Beverage Co., 757 So.2d 925, 929(¶ 10) (Miss.1999). When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Id.
¶ 22. The instruction accepted by the court did adequately charge the jury and was an accurate assessment of the law. It afforded Purvis the benefit of a defense based on “accident and misfortune” and most accurately coincided with the testimony given at trial. There was no need to grant the other instructions. This issue is without merit.
*27 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THREE YEARS SUSPENDED IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.