# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-KA-00084-COA

**DERRICK LEVON HARRIS A/K/A DERRICK L. HARRIS A/K/A DERRICK HARRIS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2024 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS, AND McDONALD, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Derrick Harris was convicted of one count of first-degree murder in the shooting death of Brandon Swain and of one count of aggravated assault arising out of the same incident. On direct appeal, Harris argues that the trial court erred in giving a jury instruction that referenced accident and misfortune as well as self-defense. On plain error review, we find no reversible error and affirm.

## FACTS

¶2.    Brandon Swain was the bystander victim of a drive-by shooting that occurred on July

26, 2021, on Roosevelt Street in Cleveland. In the hours before the shooting, Harris' sixteen-year-old cousin Cedric Hall was socializing at a friend's house with several other people. According to his testimony at trial, Cedric decided to visit a different neighbor's house. Because Cedric knew that the neighbor did not allow guns inside her home, he gave his gun to a friend for safekeeping. However, another person present, Jakavion Johnson, stole the gun from Cedric's friend and then robbed Cedric at gunpoint, taking his wallet and phone. Cedric called Harris and told him what happened.

¶3.     Cedric and his fourteen-year-old brother, Monterious Cox, who were in their mother's car, then drove to pick up Harris and his friend Malachi Butler. Harris and Butler got into the back of the car. The four drove to Roosevelt Street looking for Jakavion. Cedric testified that he "thought [Harris] was going to be a big cousin and get my stuff back." Harris and Butler both had guns. Butler's gun was large, and Harris' gun was smaller. After not initially seeing Jakavion, Cedric wanted to go home; however, Harris berated Cedric for being a coward. They switched seats, and Harris began driving the car. Cedric got on the floor of the car when he realized that Harris was driving them back to the Roosevelt Street area.

¶4.     This time, Jakavion was outside. Butler, who was next to Cedric in the back seat, began firing his gun from the car. Cedric heard six or seven gunshots. Harris damaged the car by running it into a mailbox and had to pull over. Harris got out of the car, and Butler handed him the larger gun. Harris began shooting in the same direction that Butler had been shooting. Everyone who was in the car then ran. Monterious also testified and corroborated Cedric's account of what happened. Monterious was riding in the front passenger seat and

2

got on the floor when he heard the initial gunshots. He testified he heard returning gunshots coming from Jakavion until Harris crashed the car, at which point Harris got out of the car and started shooting back in Jakavion's direction.

¶5.     Frederick Johnson is a resident on Roosevelt Street who was shot twice in the back during the incident. Frederick testified that he was close friends with both Jakavion Johnson and Brandon Swain. On the day of the shooting, Jakavion and Swain were outside Johnson's house. Brandon was near the street talking to friends who had pulled up in a car. Jakavion was near the open front door of the home. Frederick was inside when the gunshots started. Frederick was trying to get his girlfriend and his kids to the back of the house for safety when the bullets struck him in the back. Frederick testified that when the gunshots started, Jakavion started running and did not come into the house.

¶6.     Employees and customers of a nearby NAPA Auto Parts heard gunshots and then observed a smoking vehicle with multiple flat tires come to a stop. One customer filmed the occupants of the car running away, with more than one appearing to have a gun. The car was traced to Cedric's and Monterious's mother, who cooperated with the investigation.

¶7.     When law enforcement responded to the scene, they discovered Brandon deceased from a stray bullet. Joe Smith, the Captain of Investigations with the Cleveland Police Department, testified that a total of nine shell casings were recovered from the scene from three different gun types. Police recovered seven 7.62x39mm shell casings, one .22-caliber long rifle shell casing, and one 9mm shell casing. The car driven and crashed by Harris did not have any bullet hole damage. However, two vehicles parked in front of Frederick's house

did have bullet-hole damage.

¶8. Harris and Butler fled to Texas and were apprehended in September 2021. They were tried together as co-defendants. Cedric and Monterious pled guilty to accessory after the fact and received non-adjudicated five-year sentences in exchange for testifying. In Harris and Butler's trial, the court gave Jury Instruction C-13, which stated:

> Under the law the killing of another is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual and ordinary caution and without any unlawful intent.
>
> The defendant in this case is claiming that the victim here was shot by accident and misfortune when he, the defendant, was acting in legal self defense. To make the shooting of another, even a third party, justifiable or excusable on the grounds of self-defense, the danger to the defendant must be either actual, present, and urgent, or the defendant must have had reasonable grounds to apprehend design on the part of another to kill them or to do them some great bodily harm. And, in addition to this, there must have been reasonable grounds to apprehend that there was imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendants acted.

Harris did not object to the instruction, and the record indicates that Harris' trial counsel explicitly agreed three different times on the record to the instruction being given.

¶9. The jury returned guilty verdicts, and the court sentenced Harris to serve life in prison for Count I and a concurrent twenty-year term in custody for Count II. Harris now appeals.

**STANDARD OF REVIEW**

¶10. Our appellate courts "review[] the grant or denial of proposed jury instructions for an abuse of discretion." *Quinn v. State*, 191 So. 3d 1227, 1231-32 (¶18) (Miss. 2016). "Whether to grant or deny proposed jury instructions is within the sole discretion of the circuit court." *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012).

4

**DISCUSSION**

¶11.　The sole argument Harris raises on direct appeal is that the trial court erred in giving Jury Instruction C-13. Harris did not object to the instruction at trial. Further, the record indicates that Harris explicitly agreed to the instruction three times. "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue." *Ward v. State*, 297 So. 3d 286, 289 (¶11) (Miss. Ct. App. 2020) (quoting *Husband v. State*, 204 So. 3d 353, 356 (¶10) (Miss. Ct. App. 2016)). "Further, when a party acquiesces to the giving of a jury instruction, that party is procedurally barred from later raising an error with the instruction on appeal." *Spiers v. State*, 361 So. 3d 643, 654-55 (¶36) (Miss. 2023) (quotation marks omitted); *see also Rash v. State*, 416 So. 3d 1024, 1031-32 (¶24) (Miss. Ct. App. 2025).

¶12.　Because Harris failed to object to the instruction at trial, we are limited to plain error review. In an analysis under plain error review, "[o]nly an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Arnold v. State*, 393 So. 3d 1096, 1105 (¶21) (Miss. Ct. App. 2024) (quoting *Willis v. State*, 999 So. 2d 411, 414 (¶9) (Miss. Ct. App. 2008)). In reviewing whether giving the instruction affected Harris' substantive or fundamental rights, we "determine: (1) whether the trial court deviated from a legal rule; (2) whether the error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." *Short v. State*, 349 So. 3d 193, 195 (¶6) (Miss. Ct. App. 2022).

¶13.　"A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which

5

incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id.* "In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole." *Jones v. State*, 827 So. 2d 21, 26 (¶21) (Miss. Ct. App. 2002). Mississippi Code Annotated section 97-3-17(b) (Rev. 2020) provides that "[t]he killing of any human being by the act, procurement, or omission of another shall be excusable: . . . (b) [w]hen committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation[.]"

¶14. Harris points to *Taylor v. State*, 597 So. 2d 192 (Miss. 1992), in which a conviction was reversed because the court gave a self-defense instruction when the defendant did not present a self-defense argument at trial. Instead, the defense argued exclusively that the killing occurred when the gun went off by accident. *Id.* at 193. However, the jury was instructed primarily on self-defense with an ancillary accident and misfortune instruction. *Id.* at 194. In finding reversible error, the Mississippi Supreme Court noted that the problem was "that Taylor made no claim of self-defense. No one offered evidence of self-defense. Taylor's theory of defense throughout was one of accident or excusable homicide . . . . The instruction, considered by itself, deflects the jury's attention from accident as the defense." *Id.* at 194. Fatally, "placing the (non)issue of self-defense before the jury, and giving it a place of prominence in excess of that given the defense of accident, resulted in the substantial risk that the jury misapprehended the law in the course of its deliberations." *Id.* at 195.

¶15. Harris argues that while his circumstance is the inverse of *Taylor*—i.e., Harris did argue self-defense and did not argue that the gun went off accidentally—reversal is similarly warranted because the jury could have been mislead into thinking they had to find that the bullet that killed Brandon was shot by accident in order to acquit based on self-defense. He asserts that intent and accident are inapposite, and, thus, potentially confused the jury.

¶16. The State rebuts by pointing to two cases in which similar instructions were affirmed on appeal when both defenses were supported by the testimony presented at trial. In *Evans v. State*, 797 So. 2d 811 (Miss. 2000), the defendant testified that he tried to avoid a confrontation with fellow bar patrons by leaving through a back door. *Id.* at 813 (¶3). However, the back door was locked. *Id.* He pointed a gun in the air and shot it several times to scare off aggressors. *Id.* A woman standing between him and the aggressors was shot and killed. Evans testified that he did not intend to shoot her or think that he had shot her when he pointed a gun in the air and shot. *Id.* at (¶5).

¶17. The court gave the jury the following self-defense instruction: "[I]f you believe from the evidence that [the victim] died as a result of the discharge of a pistol which was, at the time of the fatal shot, in the possession of Defendant, but that the fatal shot was fired through accident and misfortune, at a time when Defendant, was lawfully acting in self-defense, then you must find Defendant not guilty." *Id.* at 814 (¶10). The instruction as a whole stated:

> The Court instructs the jury that you are not to judge the actions of Defendant, Milton Evans, Jr., in the cool, calm light of after developed facts, but instead you are to judge the Defendant's actions in the light of the circumstances confronting the Defendant at the time, as you believe from the evidence that those circumstances reasonably appeared to the Defendant on that occasion, and if you believe that under those circumstances it reasonably appeared to

7

> Defendant at the instant, if any, that [any of the patrons] took up a weapon, that the Defendant there and then had reasonable ground to apprehend a design on the part of [any of the patrons] to kill the Defendant or do him some great personal injury, and that there reasonably appeared to the Defendant to be imminent danger of such designs being accomplished, then the Defendant, Milton Evans, Jr., was justified in anticipating an attack by [any of the patrons], and further if you believe from the evidence that Luciana Bunton died as a result of the discharge of a pistol which was, at the time of the fatal shot, in the possession of Defendant, but that the fatal shot was fired through accident and misfortune, at a time when Defendant[] was lawfully acting in self-defense, then you must find Defendant not guilty in the death of Luciana Bunton.

*Id.* Examining a challenge to the instruction on appeal, our supreme court stated that "Evans' theory as to the death of [the victim] was that if he shot her, it was an accident which occurred as he was acting in lawful self defense. Evans was entitled to have this theory presented to the jury, and instruction C-6 did just that." *Id.* at 815 (¶12).

¶18.    In *Jones*, 827 So. 2d at 26 (¶21), the defendant testified at trial "that he saw that [the victim] was armed and pulled his gun out. It then happened to go off." *Id.* Jones requested an instruction on accident and misfortune, but the court gave an instruction that combined self-defense with accident and misfortune. *Id.* On appeal, this Court noted that the combined jury instruction "was based on the testimony given at trial." *Id.* We determined that "[t]he instruction accepted by the court therefore combined the two elements and was more closely based on the testimony than either instruction submitted by [the defendant]." *Id.* The opinion further noted that the instruction "afforded [the defendant] the benefit of a defense based on 'accident and misfortune' and most accurately coincided with the testimony given at trial." *Id.* at (¶22).

¶19.    Here, Harris' circumstance is more similar to the facts of *Evans* and *Jones* than to

8

*Taylor*. Harris presented a theory that he intentionally shot the gun as an act of self-defense in response to Jakavion's alleged gunfire. Similar to *Jones*, the expansion of the instruction permitting acquittal if the gun accidentally went off while Harris was using the gun to act in self-defense broadened the grounds for the jury to acquit him. To the extent that Harris' case is distinguishable from *Evans* and *Jones* in that Harris exclusively argued self-defense and not accident, we are limited to plain-error review in light of Harris' repeated acquiescence to the instruction at trial. Looking to the instruction, the testimony presented at trial, and the comparable cases of *Evans* and *Jones*, we cannot say that the giving of the instruction prejudiced the outcome of the trial or was plainly wrong and resulted in a miscarriage of justice. Harris argued self-defense. Permitting the jury to find that an accident occurred while Harris was intentionally acting in self-defense does not present the same risk of prejudicial confusion as was present in *Taylor*, in which the defendant did not argue or present evidence of self-defense, and the jury was at risk of thinking they needed to find self-defense before it could find accident.[1]

## CONCLUSION

¶20.   On plain error review, we find no reversible error in the trial court's grant of Instruction C-13. We therefore affirm Harris' convictions and sentences for first-degree murder and aggravated assault.

¶21.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**

---

[1] Additionally, Taylor objected to the instruction at trial.