627 So.2d 326 (1993)
Charles L. STRINGER
v.
STATE of Mississippi.
No. 90-KA-1306.
Supreme Court of Mississippi.
October 7, 1993.
Rehearing Denied December 23, 1993.
Christopher N.K. Ganner, Jackson, for appellant.
Charles Stringer, pro se.
Michael C. Moore, Atty. Gen., Jackson, Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the court:
Police initially went to the Stringer house to arrest Stringer pursuant to an outstanding capias. With probable cause to believe he was inside the house, the officers entered and observed contraband in plain view. After obtaining a search warrant, more narcotics were found, giving the officers probable cause to arrest Stringer on a new charge when he arrived at the house. At trial the State connected Stringer to the marijuana by showing he resided at the house, which was *328 owned by his mother. Stringer's defense was that he did not reside there.
During trial, out of the presence of the jury, the trial judge ruled that certain witnesses Stringer had hoped to present would not be allowed to testify because of the gross negligence involved on the part of Stringer's counsel, who admitted he had been negligent in not supplying names of some witnesses to the State, but that Stringer had just recently insisted upon calling some of the witnesses. Stringer himself, also while the jury was out, told the judge he had supplied names of all witnesses to his attorney a year ago and that he had proof of his residence. Stringer asked for a mistrial because he had been misrepresented on the facts. He said his mother, aunt, and roommate could testify that he did not live at his mother's house. Stringer's attorney stated that he felt there were extreme liabilities involved in calling some of the witnesses. At this point the trial judge said he was not in a position to have a hearing on ineffective assistance of counsel mid-trial. Stringer was warned that if he chose to testify, his testimony could be used against him at this trial as well as later. The trial judge also ruled that Stringer's prior conviction of possession with intent would be admissible as probative on the issue of Stringer's intent. Stringer nonetheless took the stand.
Stringer was subsequently convicted on possession of marijuana, more than one ounce and less than one kilogram, with intent to distribute. He was sentenced as an habitual offender to thirty years without parole and a million dollar fine was imposed. Following Stringer's motions for new trial, the trial judge performed a proportionality review and re-sentenced Stringer to thirty years, the first sixteen without parole. Stringer asserts the following issues on appeal:
1. Whether the court erred in failing to grant a mistrial when it was shown that Stringer was denied effective assistance of counsel at trial in violation of his rights under the Constitutions of Mississippi and the United States;
2. Whether the delay of one year and ten months from Stringer's arrest on the instant charge until trial constituted a denial of his right to a speedy trial as guaranteed him by the Sixth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment to the United States Constitution;
3. Whether Stringer was arrested in a manner which violated his Fourth Amendment rights under the United States Constitution and Section 23 of the Mississippi Constitution of 1890;
4. Whether the court erred in failing to grant Stringer's motion for J.N.O.V. or in the alternative for a new trial based on newly discovered evidence; and
5. Whether the sixteen (16) year habitual sentence imposed was grossly disproportionate to the severity of the crime and whether it violates Stringer's right to be free of cruel and unusual punishment as secured by the Constitutions of the United States and the State of Mississippi.
Because we reverse on Stringer's first assignment of error, we decline to address the others.

THE LAW
WHETHER THE COURT ERRED IN FAILING TO GRANT A MISTRIAL WHEN IT WAS SHOWN THAT STRINGER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE CONSTITUTIONS OF MISSISSIPPI AND THE UNITED STATES.
Although this assignment of error as framed asks for review of the trial court's denial of mistrial, the arguments in Stringer's brief and reply brief merely mention the mistrial request (made by Stringer rather than his counsel) then ask this Court to determine whether he was denied effective assistance of counsel.
To successfully claim ineffective assistance of counsel the Defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and *329 adopted by this Court. Alexander v. State, 605 So.2d 1170, 1173 (Miss. 1992); Knight v. State, 577 So.2d 392, 394 (Miss. 1991); Barnes v. State, 577 So.2d 840, 841 (Miss. 1991); McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990); Waldrop v. State, 506 So.2d 273, 275 (Miss. 1987), aff'd after remand, 544 So.2d 834 (Miss. 1989); Stringer v. State, 454 So.2d 468, 476 (Miss. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). The Strickland test requires a showing of (1) deficiency of counsel's performance (2) sufficient to constitute prejudice to the defense. McQuarter, 574 So.2d at 687. The burden to demonstrate both prongs is on the defendant. Id; Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1984), reversed in part, affirmed in part, 539 So.2d 1378 (Miss. 1989), and he faces a strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance. McQuarter, 574 So.2d at 687; Waldrop, 506 So.2d at 275; Gilliard v. State, 462 So.2d 710, 714 (Miss. 1985). The defendant must show that there is a reasonable probability that but for his attorney's errors, defendant would have received a different result in the trial court. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss. 1992); Ahmad v. State, 603 So.2d 843, 848 (Miss. 1992).
This Court must determine whether counsel's performance was both deficient and prejudicial based upon the totality of the circumstances. Carney v. State, 525 So.2d 776, 780 (Miss. 1988); Waldrop, 506 So.2d at 275; Read v. State, 430 So.2d 832, 839 (Miss. 1983). Our scrutiny of counsel's performance must be deferential. Ahmad, 603 So.2d at 848. If defendant raises questions of fact regarding the deficiency of counsel's conduct or prejudice to the defendant, he is entitled to an evidentiary hearing on ineffective assistance of counsel. Alexander, 605 So.2d at 1173; Leatherwood, 473 So.2d at 971. Where this Court determines defendant's counsel was ineffective, the appropriate remedy is to remand for a new trial. Nicolaou, 612 So.2d at 1086.
Stringer cites as deficient conduct by his trial counsel the failure to subpoena witnesses for his defense. According to Stringer, had his roommate, aunt, and mother been subpoenaed, they would have testified at trial that he did not live with his mother in the house where the marijuana was found. As the State connected Stringer to the marijuana by virtue of his residence in the house where the marijuana was found, and Stringer's defense was that he did not live there, Stringer argues the outcome of his trial would have been different if these three witnesses had testified. Additionally, Stringer says his attorney's failure to call these witnesses forced him to take the stand, which allowed the State to use his prior drug conviction for impeachment.
The record reflects and the State concedes in its brief that Stringer's counsel's performance was deficient because of his gross negligence in complying with discovery guidelines, thereby meeting the first prong of Strickland. But has Stringer made an affirmative showing of prejudice to his defense?
The trial court found Stringer's attorney's admissions of negligence regarding his discovery violation (failure to provide the State with a list of witnesses) amounted to "gross negligence" and, as a result, excluded some of Stringer's witnesses. It does not appear that Stringer's mother, aunt, or roommate were mentioned until a later point in the trial when Stringer asked for a mistrial because he had been "misrepresented" on the facts. At this time Stringer claimed his attorney had not subpoenaed his mother, aunt, and roommate. Counsel responded that he felt there were extreme liabilities involved in calling some of these witnesses. The judge stated on the record that he was not in a position to have a full-fledged hearing on ineffective assistance of counsel mid-trial; no findings regarding ineffective assistance were made by the trial court.
The judge then ruled that Stringer's prior conviction for possession of marijuana with intent to distribute would be inadmissible for impeachment purposes, because more prejudicial than probative, but admissible on the issue of Stringer's intent. Even in the face of this ruling, Stringer had no choice but to take the stand. As a result of the exclusion of his witnesses, testimony from Stringer himself was the only means of presenting to *330 the jury evidence that Stringer did not live at the house where the marijuana was found.
Two important rules of law are at play here: a party is bound by the acts of his attorney [Pace v. Financial Security Life of Miss., 608 So.2d 1135, 1138 (Miss. 1992); Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 900 (Miss. 1981); Fairchild v. GMAC, 254 Miss. 261, 265, 179 So.2d 185, 187 (1965)], and an accused is entitled to a reasonable defense in court with the effective assistance of counsel. Littlejohn v. State, 593 So.2d 20, 22 (Miss. 1992); U.S. Const. Amend. VI. The force of the first rule highlights the necessity of trial courts to insure the enforcement of the second. The trial court should have allowed Stringer's witnesses to be called else he should have granted the mistrial. Had the witnesses been allowed, the Box[1] rule would have protected the State's interest.
If Stringer's roommate, aunt, and mother had testified that he did not live at his mother's house, where the marijuana was found, Stringer would not have been forced to take the stand in order to present this evidence to the jury. And had Stringer not testified, he could not have been impeached with evidence of his prior drug conviction. Clearly, Stringer has made an affirmative showing of prejudice to his defense. It follows that his conviction must be reversed and this case remanded for a new trial. Nicolaou, 612 So.2d at 1086.
We take this opportunity to caution the bench and bar of a growing number of reversals caused by inefficient, ineffective or unprofessional conduct by counsel. Retrials of criminal proceedings are extremely costly to the taxpayers of this State. It is not beyond the authority of this Court to assess the entire costs of a new trial to the attorney whose conduct made the trial necessary in those cases where this occurs. Personal liability for this cost may well be imposed by this Court in the future and it will be done with an even hand, applied both to the private attorney and the attorney representing the State. This Court is increasingly unwilling to cast the burden of incompetence on innocent taxpayers and considers this notice to the bench and bar that in the future we may not do so.
REVERSED AND REMANDED TO THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY.
HAWKINS, C.J., DAN M. LEE, P.J., and PITTMAN, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
SMITH, J., dissents with separate written opinion joined by PRATHER, P.J.
BANKS, J., not participating.
SMITH, Justice, dissenting:
After careful review of the record, I am of the opinion that Charles Stringer has not shown that his trial counsel's performance was sufficiently ineffective to constitute prejudice to his defense and warrant reversal of his conviction. He has not met the test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and consequently I dissent from the opinion of the majority.
A review of the facts is warranted, as the majority fails to include many pertinent facts essential for the determination of this case. On November 16, 1988, Jackson police received information that Stringer was living at his mother's home, where the officers had known Stringer to live in the past, at 136 Kimbrough in Jackson. Stringer is a native of Jackson and was wanted under an outstanding capias. The informant who had been reliable in the past also said that Stringer was driving a small black Datsun. The information was corroborated by information received by one of the officers that Stringer was selling drugs from the Kimbrough Drive address.
The police confirmed that the black Datsun was at the address and verified that Stringer's mother owned the house at 136 Kimbrough and that this had been Stringer's residence in the past.
At about five o'clock that evening, several officers went to the Kimbrough address. On *331 arrival, the officers observed the black Datsun parked in the driveway. There were lights on inside and a television or radio on. When there was no response to knocking on the door, the officers questioned a neighbor who said Stringer had been at the house that day and that the black Datsun was Stringer's. Believing that Stringer was inside the house, the officers made a forced entry to arrest him. Upon entering the kitchen, the officers noticed the smell of marijuana and saw a marijuana cigarette butt in a living room table. Next to the marijuana butt was Stringer's driver's license, bearing the Kimbrough address and an expiration date of April, 1990. Stringer was not found, but based on what they observed, the officers obtained a search warrant for the house.
A search of the house revealed two bags containing four smaller bags of marijuana, weighing 109.1 grams, found in the clothes dryer. The officers also found men's clothing in one of the bedrooms, which also contained a filing cabinet/safe combination. The safe was later opened by Stringer and contained marijuana residue and a car tag with accompanying papers for a Datsun. The car tag receipt, dated October 12, 1988, was in Stringer's name and showed 136 Kimbrough as his address. An application for title showed the same name and address and was also dated October 12, 1988.
The filing cabinet contained a large certified mail envelope, addressed to Stringer at 136 Kimbrough, two address books and several loose papers bearing initials with various amounts of money listed beside each one. Sgt. Campbell testified that he had seen these marks often in drug trafficking businesses indicating payments made. The initials "D.L." appeared several times and the name "Donnie Long" was found in one of the address books. Donnie Long testified that he had fronted marijuana for Stringer in November, 1988. A three-ring notebook bearing more initials and money figures was also found in the bedroom. Again, "Donnie Long" and "D.L." appeared in the notebook along with money figures. Three more bags, containing 82.9 grams of marijuana, were taken from a dresser in the bedroom.
While the house was being searched and officers were still putting evidence into an unmarked police car, Stringer pulled into the driveway. Stringer attempted to leave but was stopped by officers. Stringer was removed from his vehicle and arrested. No evidence of drugs was found in the car or on Stringer. While being booked, Stringer gave his address as 136 Kimbrough.
Out of the presence of the jury, Barbara Magee testified that she knew Stringer as her neighbor and that he lived on Kimbrough Drive. On re-direct, however, Magee said she did not know where Stringer was living on the date of his arrest. Also while the jury was out, Scott Hood testified that Stringer lived in his mother's house on the date of the arrest. He said that Stringer had been living in a trailer in Rankin County although he had seen Stringer at his mother's house a lot. Vanessa Hood, another resident of Kimbrough Drive, testified that she thought Stringer was living on Kimbrough at the time of his arrest. Ms. Hood thought he also had an apartment somewhere else but she was not sure.
Donnie Long testified that Stringer lived in two places: a trailer and his mother's house. Long said that Stringer had moved from the trailer to his mother's house two or three weeks before his arrest and that he maintained a bedroom in her house.
Out of the presence of the jury, the trial judge ruled that certain witnesses Stringer had hoped to present would not be allowed to testify because of the negligence of Stringer's counsel in not supplying the names of some witnesses to the State. Stringer told the judge that he had supplied the names of the witnesses to his attorney a year prior to the trial. Stringer said his mother, aunt, and roommate could testify that he did not live at his mother's house. Stringer's attorney stated that he felt that there were extreme liabilities involved in calling some of the witnesses Stringer suggested. Stringer was warned that if he chose to testify, his testimony could be used against him at the trial and later. The judge also ruled that Stringer's prior conviction of possession with intent would be admissible as probative of intent. Stringer nonetheless decided to take the stand.
*332 Stringer testified that he lived in a trailer in Brandon in November, 1988. The reason he gave for being at his mother's house on the afternoon of the arrest was to meet several people for various reasons and to check on his mother. Stringer said he moved in with his mother shortly after his arrest. Stringer explained that the driver's license address was incorrect because he had gotten a new license in July, 1986 and his old license was the one found by police. Stringer denied any knowledge of the marijuana found at his mother's house and said that other family members had access to the house. Stringer denied that he had a bedroom in his mother's house; he insisted that it was used by his brother who lived in Michigan. Stringer also denied having done any business with Donnie Long.
Stringer was found guilty and sentenced as an habitual offender. We are aware of Stringer's sophistication and of his knowledge of the criminal justice process and his rights as he is a third time habitual offender. He appears from the record to have made attempts at being his own lawyer. He certainly contradicted his lawyer on numerous issues before the trial judge.
Stringer alleges that his attorney's deficient conduct in failing to provide discovery caused the trial judge to exclude certain defense witnesses, which resulted in prejudice to him. He claims that the excluded witnesses would have testified that he did not live at 136 Kimbrough. However, this testimony would not have with any reasonable probability sufficiently rebutted the State's overwhelming evidence that Stringer in fact did reside at that location. Stringer himself, as well as other witnesses, testified that Stringer did not live at 136 Kimbrough. The jury obviously was not impressed, nor did they believe the defense. Any other witnesses would have been merely cumulative and would not, with any reasonable probability, have convinced the jury otherwise. Stringer did not meet the second prong of Strickland v. Washington and should not prevail on the claim of ineffective assistance of counsel.
Stringer failed to show that had the excluded witnesses been allowed to testify, a reasonable probability existed that the outcome of the trial would have been different. As pointed to in the facts cited above, the State's evidence on Stringer's residency was overwhelming. One could easily infer from the evidence adduced that Stringer resided in two places, but clearly he was in control of or had dominion over the marijuana. Also, the trial court preserved on-the-record the testimony of some of the excluded witnesses while conducting a suppression hearing. This portion of the record reveals that these witnesses' testimony offered little aid or comfort to Stringer's defense.
The only witnesses which Stringer now alleges that he was prejudiced by the denial of their testimony are his mother, his aunt and a roommate. Stringer argues that their testimony would have been in his favor. This evidence is not enough to meet the requirements of Strickland. Stringer necessarily must show that there is a reasonable probability that, but for his attorney's errors, the result would have been different if they had testified and he would have been acquitted. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
This Court has adopted the two-prong test for ineffective assistance of counsel set out in Strickland. See Fisher v. State, 532 So.2d 992 (Miss.); Reed v. State, 536 So.2d 1336 (Miss. 1988); Gilliard v. State, 462 So.2d 710 (Miss. 1985); Leatherwood v. State, 473 So.2d 964 (Miss. 1985); and Wilcher v. State, 479 So.2d 710 (Miss. 1985).
Stringer himself stated that these excluded witnesses, "weren't that important." Stringer testified that he did not live at 136 Kimbrough. Also, Donnie Long testified that he knew Stringer lived in two different places. The excluded witnesses' testimony, if allowed, would have been cumulative at best, and problematic with "extreme liabilities" at worst. It is clear from the record that no vital witness list existed. Stringer's attorney told the court that Stringer was still furnishing new names of proposed witnesses several days before the trial. The attorney further told the court that he did not believe these proposed witnesses should be called. He was of the opinion that "extreme liabilities" would be created if they testified, but that Stringer insisted that they be allowed to *333 testify. How would Stringer's mother have responded when asked on cross-examination: If Charles Stringer did not live with you at the 136 Kimbrough address, how do you explain all these items of personal property, identified as belonging to Charles Stringer and mostly in plain, open view, located within your home? More damaging would be this question: Whose marijuana was this Ms. Stringer? I am not at all confident Stringer's mother would have claimed ownership of the marijuana, absolving her son of all guilt. Neither do I think Stringer's roommate or aunt would have been too quick to claim the marijuana as belonging to them. Defense counsel obviously recognized this problem and pointed to this in his remarks to the trial judge. The three who did testify at the suppression hearing did not create a reasonable probability that Stringer would have been found not guilty by the jury had they been allowed to testify. None of them could testify that Stringer did not live at 136 Kimbrough. All three of these neighbors of Stringer thought he lived with his mother, or they did not know where he lived.
Stringer's counsel was deficient to some extent and failed to provide discovery to the State as required by the rules, but that alone is not enough to warrant reversal of this case. Koch v. Puckett, 907 F.2d 524 (5th Cir.1990). In Koch, the Fifth Circuit Court of Appeals held:
Even if the defendant shows that particular actions of counsel were unprofessional and unreasonable, the defendant must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . .. The assessment of prejudice should proceed on the assumption that the decision maker is reasonably, conscientiously, and impartially applying the standards that govern the decision." [Strickland] 466 U.S. at 694, at 2068.
907 F.2d at 527
This Court stated in Knox v. State, 502 So.2d 672 (Miss. 1987), that the standard for ineffective assistance of counsel makes the claim difficult to prove, and rightfully so. Id. at 676.
Stringer barely passes the test under the first prong of Strickland. Stringer's attempts at representing himself and the contradictions with his attorney's statements to the trial court are confusing and unbelievable. Even the trial judge was concerned about Stringer not following advice of counsel. The trial judge stated he was not getting into an ineffective assistance of counsel issue mid-trial. Stringer was also warned that if he testified, that testimony could be used against him at this trial and at a later time. Stringer testified in spite of this warning, knowing full well that by taking the stand, his prior conviction for possession with intent would be admissible against him as probative on the issue of intent. His attorney was correct in maintaining there were insurmountable problems with putting some of these excluded witnesses on the stand, such as Stringer's mother. This would only have compounded Stringer's problems with the jury. This decision was trial strategy by Stringer's attorney. While the attorney may be faulted for failure to provide timely discovery, it is not difficult to believe that Stringer was constantly, even just a few days prior to trial, still naming new witnesses for use at trial. Regardless, the physical evidence presented by the state is overwhelming. Stringer fails to meet the second prong of Strickland. The excluded witnesses' testimony would not, with any degree of reasonable probability, have sufficiently rebutted the State's ample evidence that Charles Stringer resided at 136 Kimbrough, and the marijuana found at said address belonged solely to Stringer. Stringer's counsel was not ineffective, the trial judge commited no error and this case should be affirmed.
I respectfully dissent.
PRATHER, P.J., joins this opinion.
NOTES
[1] Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring).