# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-01142-SCT

*CURTIS DAVID HAWTHORNE*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 7/1/2002 |
| TRIAL JUDGE: | HON. RICHARD D. BOWEN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT W. DAVIS |
| | CHRISTI R. McCOY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Curtis David Hawthorne was convicted by a Lee County Circuit Court jury of manslaughter after he caused a motor vehicle wreck in Tupelo which killed Jeffrey McGrew. Hawthorne claimed that he was insane at the time of the wreck. The jury rejected this defense and found Hawthorne guilty, and he was sentenced to fifteen years in prison with seven years suspended. He moved for a J.N.O.V. or new trial, which the trial court denied. Hawthorne appealed, and the appeal was assigned to the Court of Appeals. A divided Court of Appeals reversed and rendered. *Hawthorne v. State*, 2003 WL 22390032 (Miss.

Ct. App. 2003). The State's motion for rehearing was denied by the Court of Appeals, and we granted the State's petition for writ of certiorari.

¶2.     Having considered the merits, we find that the Court of Appeals' majority erred in reversing and rendering Hawthorne's case. We agree with the dissenting view that the verdict was against the weight of the evidence. Accordingly, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶3.     In November of 2000, David Hawthorne, who was a resident of Virginia, was in Tupelo helping his father refurbish a hotel. During the days immediately preceding the accident, Hawthorne and his father discussed religion for hours on end. Following these religious discussions, Hawthorne began to have feelings and sensations that he and his father interpreted as religious experiences. Apparently Hawthorne was experiencing symptoms of schizophrenia. Hawthorne began to hear what he believed to be the voice of God or the Devil. He also began to believe that he was in Hell, that the day of judgment was at hand, that the television was sending messages to him from God or the Devil, that he was going back in time, and that the presidential election of 2000 was being held specifically for him. Hawthorne was observed walking around in a trance and praying in the rain. After experiencing these feelings, Hawthorne believed that he had to go home to Virginia to deliver a cross to his daughter, cure his wife's cancer, and be home before the world came to an end.

¶4.     On the morning of November 15, 2000, Hawthorne, still under the impression that he had to get to Virginia, borrowed his father's truck and drove down South Gloster Street at a high rate of speed. In his state, Hawthorne believed that he was in God's truck, that no matter what direction he drove he would reach Virginia, and that his truck would pass through any obstacles he might encounter. At the intersection

2

of Green Street and Gloster Street, Hawthorne ran the red light and struck the car driven by Jeffrey McGrew, who died at the scene.

¶5.     After the accident, Hawthorne left his truck and ran south on Gloster Street. Hawthorne was quickly apprehended by the police. When the police apprehended Hawthorne, he was sweating profusely and mumbling something about getting to his daughter. When the officer had Hawthorne under control, he placed Hawthorne in the back of his patrol car. When the officers asked Hawthorne if he was drunk, he responded that he was drunk with God. Hawthorne was then transported to the sheriff's department. After attempts at interrogation, during which Hawthorne exhibited erratic behavior, Hawthorne was transported to North Mississippi Medical Center where he was examined by the emergency room physicians and a psychiatrist.

¶6.     At trial, Hawthorne produced numerous mental health professionals who testified that he was insane under the *M'Naghten* test at the time of the collision. The State produced no expert witnesses on this issue. The jury found Hawthorne guilty, and the judge sentenced Hawthorne to fifteen years with seven suspended.

¶7.     On appeal the Court of Appeals reversed and rendered in a 5-4 opinion, with one judge not participating. *Id.* The majority found that the State, with the burden of proving that Hawthorne was sane, had failed to present sufficient evidence to support his conviction. The dissent argued that while the State had produced no medical evidence, there was evidence which the jury could have relied on to convict, such as all the cars and other objects Hawthorne had avoided in his drive through Tupelo before he rammed his truck into the car McGrew was driving. The dissent found that the verdict was against the weight of the evidence and would have reversed and remanded for a new trial.

## DISCUSSION

3

¶8.     The standard of review for the denial of a motion for directed verdict and judgment notwithstanding the verdict is the same. *Shelton v. State*, 853 So. 2d 1171, 1186 (Miss. 2003). A directed verdict and JNOV both challenge the sufficiency of the evidence presented at trial. *Id.* This Court considers "all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Seeling v. State*, 844 So. 2d 439, 433 (Miss. 2003). The Court must disregard evidence that is favorable to the defendant. *Hubbard v. State*, 819 So. 2d 1192, 1195 (Miss. 2001). This standard of review demands that the Court reverse and render if the facts, viewed in that light, point so overwhelmingly in favor of the defendant that reasonable men could not have arrived at a guilty verdict. *Seeling*, 844 So. 2d at 443. The Court must affirm, however, when there is substantial evidence in support of the verdict of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. *Id.* This Court has also emphatically provided that it will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983).

¶9.     In Mississippi, the question of whether a defendant in a criminal case was insane at the time of the offense is controlled by the *M'Naghten* test. *Woodham v. State*, 800 So. 2d 1148, 1158 (Miss. 2001). Under the *M'Naghten* test, it must be proved that at the time of committing the act that the accused "was laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing or (2) if he did know it, that he did not know that what he was doing was wrong." *Id.* The inquiry under this test is whether the defendant "did not know right from wrong at the time of committing the act." *Id.* It is presumed that the defendant is sane until there is a reasonable

doubt regarding his or her sanity. *Taylor v. State*, 795 So. 2d 512, 517 (Miss. 2001). When such doubt is raised, the State bears the burden of proving the defendant's sanity beyond a reasonable doubt. *Id.* The determination as to a defendant's sanity is a question to be resolved by the jury, which may accept or reject expert and lay testimony. *Tyler v. State*, 618 So. 2d 1306, 1309 (Miss. 1993). The jury's determination will remain "undisturbed unless this Court is convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.*

¶10.    The sole issue is whether the jury was justified in finding the defendant knew right from wrong at the time of committing the act. This is a question to be determined by the jury. The Court of Appeals majority based its decision on the sufficiency of the evidence. *Hawthorne*, 2003 WL 22390032. The Court of Appeals found that the State failed to produce sufficient evidence, or any evidence at all, to prove Hawthorne's sanity beyond a reasonable doubt. *Id.* However, we find some evidence from which jurors could determine that Hawthorne was aware his actions were wrong. During the State's case-in-chief, the evidence indicated that Hawthorne was avoiding many other barriers and had been driving for miles through town before causing this wreck. It was also shown through eyewitness testimony that after the wreck, Hawthorne left his truck, looked around and then ran from the scene. This lay witness testimony was probative of whether Hawthorne knew right from wrong and sufficient evidence to allow the trial court to deny Hawthorne's motion for directed verdict.

¶11.    However, the defense put forth evidence showing Hawthorne's behavior days before this wreck. Hawthorne began to hear what he believed to be the voice of God or the Devil. He also began to believe that he was in Hell, that the day of judgment was at hand, that the television was sending messages to him from God or the Devil, that he was going back in time, and that the presidential election of 2000 was being held specifically for him. Hawthorne was observed walking around in a trance and praying in the rain for

5

hours. After experiencing these feelings, Hawthorne believed that he had to go home to Virginia in order to deliver a cross to his daughter, cure his wife's cancer, and be home before the world came to an end. It was also shown that mental problems such as schizophrenia ran in his family and several family members suffered from this disease.

¶12.    The fact that Hawthorne ran from the scene was also rebutted by the defense. According to the defense, Hawthorne ran from the scene because he was still under the delusion that he had to get back to Virginia to cure his wife, deliver the cross to his daughter, and be home when the world ended. The police officer who ran after Hawthorne testified that Hawthorne was sweating profusely and was mumbling. Hawthorne's behavior was so erratic that the police believed Hawthorne was on drugs. This erratic behavior continued throughout the questioning. One detective testified that Hawthorne would laugh one moment and cry the next and continued to say that his father was killed when in fact he was still alive. The detective stopped questioning Hawthorne because of this erratic behavior. In addition to this, the defense produced four medical experts who testified that Hawthorne was unable to appreciate the difference between right and wrong.

¶13.    A new trial should be granted if the jury's verdict "so contradicts the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose*, 440 So.2d at 300. *See also* *Frost v. State*, 453 So. 2d 695 (Miss 1984). Here, the evidence adduced by the State to prove sanity, is weak. To allow the jury verdict to stand based upon this slight evidence would result in an unconscionable injustice. The State did not prove beyond a reasonable doubt that Hawthorne was sane. The record before us lacks substantial credible evidence suggesting that at the time in question, Hawthorne was sane in the *M'Naghten* sense. *Frost*, 453 So. 2d at 456. At the end of the trial during Hawthorne's motion for directed verdict, the State acknowledged that there was little evidence in the

6

record to show that Hawthorne knew the difference between right and wrong. The State maintained that it did not have to produce any evidence of defendant's sanity because it was for the jury to determine. Even though sanity is for the jury to determine, the State must produce substantial evidence regarding the defendant's sanity. If the verdict is against the overwhelming weight of the evidence, a new trial should be ordered. *Holloway v. State*, 312 So. 2d 700, 701 (Miss. 1975). The jury verdict was against the overwhelming weight of the evidence on the issue of Hawthorne's sanity. Therefore, we hold that Hawthorne must be retried.

## CONCLUSION

¶14. For these reasons, we reverse the judgments of the Court of Appeals and the Lee County Circuit Court, and we remand this case to the circuit court for a new trial consistent with this opinion.

¶15. **REVERSED AND REMANDED.**

**WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**