986 So.2d 308 (2006)
Kenneth BROWN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00108-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied October 16, 2007.
*310 Phillip W. Broadhead, Oxford, Carol Wright-Richard, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before LEE, P.J., CHANDLER, GRIFFIS, and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Kenneth Brown was convicted of the crimes of aggravated assault (Count I) and shooting into an occupied dwelling (Count II). On Count I, he was sentenced to serve ten years in the custody of the Mississippi Department of Corrections ("MDOC"), with nine years suspended and five years supervised probation. On Count II, he was sentenced to serve five years in the custody of MDOC, with four years suspended and five years of supervised probation. The sentences are to be served concurrently. He was ordered to pay court costs of $264, attorney fees of $300, and a $1,000 fine. Brown appeals and argues that: (1) his conviction was against the overwhelming weight of the evidence, and (2) he was entitled to a mistrial due to prosecutorial misconduct. We find no error and affirm.

*311 FACTS
¶ 2. On May 2, 2003, at approximately 8:00 p.m., Earnest Moore and Latoya Carter were inside their bedroom at 115 West Second Street, in Leland, when they heard noises from outside. Carter went to make sure the front door was locked. Meanwhile, Moore was shot in the left hand as a shot was fired into his bedroom window from outside.
¶ 3. At trial, Carter testified that she looked out the hall window on the night of the shooting and saw that it was Brown standing outside of their bedroom window with something silver in his hand. She said that she told Moore that it was Brown and to get out of the room. In her first statement to the police, there was no mention that she ever looked out of the window and saw the perpetrator at all. It was not until her second police statement that Carter said that she saw Brown. Carter testified that she and Moore both told the police that same night that it was Brown.
¶ 4. The jury heard testimony that during the three weeks leading up to the shooting, Brown made threats against the household and was caught prowling outside. Moore's brother-in-law, Richard Chaney testified that Brown bragged that he had shot Moore and gotten away with it. However, Brown denied the crime and gave an alibi. The jury found him guilty.

ANALYSIS

I. Is the verdict against the overwhelming weight of the evidence?
¶ 5. Brown first argues that the verdict is against the overwhelming weight of the evidence, entitling him to a new trial. He claims that the State's sole evidence was the testimony of Moore and Carter. In their first statements they did not say they looked out the window and saw the shooter; however, in their subsequent statements they claimed to have seen him. The State maintains the jury was allowed to weigh their credibility, and there was other evidence besides this on which to base the verdict.
¶ 6. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The evidence is weighed in the light most favorable to the verdict. Id. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 7. One of the few cases where the supreme court has reversed a conviction as against the overwhelming weight of the evidence was Hawthorne v. State, 883 So.2d 86 (Miss.2004). Hawthorne was convicted of vehicular manslaughter. Id. at 87(¶ 1). The issue before the jury was whether he was insane at the time of the incident. Id. The defense put on four expert witnesses and numerous lay witnesses that testified that he was acting under a schizophrenic delusion at the time. Id. at 90(¶ 12). The State put on no expert witnesses. Id. at 88(¶ 6). It only had evidence that Hawthorne did avoid prior obstacles while driving. Id. at 88(¶ 7). The supreme court held there was sufficient evidence to support the conviction. Id. at 89-90(¶ 10). However, it held the verdict was against the overwhelming weight of the evidence. Id. at 87(¶ 2). Considering the weak evidence of sanity, it would have been an unconscionable injustice to uphold the jury's verdict.
*312 ¶ 8. We find there was not such an overwhelming weight of evidence against the jury's verdict in this case. It is true that the two eyewitnesses gave conflicting statements as to whether they were eyewitnesses or not. Also, the car that sped away from the home after the shooting was not the car Brown usually drove. The State never contacted Brown's alibi witnesses. However, Moore and Carter testified that they told police right away that Brown was the shooter. Three weeks prior, Brown was in a fight with Chaney. At the time, Chaney occupied the very bedroom into which the bullet was shot. After the fight Brown tried to go for his gun. He told Chaney, "You are a dead man." Moore's mother, Mary Simelton testified that one week before the shooting Ramonda Moore called home scared, because Brown had threatened to shoot up the house or to set it on fire. Ramonda, who was Moore's sister and Brown's ex-girlfriend, admitted this on the stand. Simelton testified that is was that same week she spotted Brown trying to break into the home. Finally, Chaney testified that Brown admitted he shot Moore.
¶ 9. The State's case can hardly be said to be as weak as that in Hawthorne. Brown's case is not an exceptional case where the verdict was so against the overwhelming weight of the evidence as to work an unconscionable injustice. This issue has no merit.

II. Did the prosecutorial misconduct warrant a mistrial?
¶ 10. Brown next argues that the prosecutor engaged in several instances of misconduct which infused the jury with prejudice, and therefore entitled him to a mistrial. The State responds that none of the misconduct warrants a reversal.
¶ 11. Several examples of which Brown complains either occurred outside the presence of the jury and were properly and ably handled by the trial court or were not objected to by Brown's counsel. Therefore, we see no need to address the issues that were not objected to at trial. What we do reach is the prosecutor's closing argument in which he asked the jury to act as the conscience of the community and his attempts to shift the burden of proof onto the defendant.
¶ 12. The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by that prejudice. Caston v. State, 823 So.2d 473, 495(¶ 71) (Miss.2002). During closing, a lawyer is entitled to argue her case drawing all rational inferences which come from the evidence presented in the courtroom. Id. at 495-96(¶ 72).
¶ 13. Prosecutor Brad McCullouch, in closing argument, stated:
All of those things, the wallet, the fact  no, you're not required to prove your alibi. But you're on trial. Think about it. You're on trial for shooting into an occupied dwelling. That's a serious, serious crime. You're not going to find these people and bring them into court?
BY MR. EICHELBERGER [Brown's attorney]: Your Honor, I need to object to that and approach.
BY THE COURT: All right. Let's approach.
[Bench conference was held. Brown moved for mistrial. The trial court sustained the objection, denied the mistrial, and gave a limiting instruction.]
BY THE COURT: Ladies and gentlemen of the jury, based upon the instructions, the Court is going to give you a *313 limiting instruction. On the screen the Court put up the instructions as to the law, as we have said that we would do throughout the beginning of this trial. The Court gives you the law. You decide the facts of this case.
The objection was based on a comment by counsel as to lack of evidence, the fact that the defendant produced no alibi witness. The Court finds that to be improper, and that he should not have said that in closing. You may continue. You have used five minutes.
....
BY MR. MCCULLOUCH: President Clinton said, if Nelson Mandella can walk away after being thrown in jail by the police for 28 years and then finally when released be called a hero for working not against his previous jailers but with them to rid corruption from the government and crime from the streets, so too can we daily walk away from our oppression and prejudice and make the types of decisions that make us heroes and rid crime from our streets.
You know, we always say something could have been done. I mean, have you heard that? Something could have been done. Something could have been done in the future. And the future is now. We get to do something about the crime in this county. It is [sic] epidemic proportion.
[Brown objected, and the court sustained.]
BY MR. MCCULLOUCH: There were small children that was [sic] in that house minutes before that shot. How many children are sleeping on the floor with their momma sleeping on the floor in Greenville and Leland?
¶ 14. Brown objected, and a bench conference was held. The prosecutor insisted the supreme court allows send the message arguments. The trial court sustained the objection.
¶ 15. Brown's attorney then gave his closing argument. Afterwards, the prosecutor gave his rebuttal, and he said, "His liberty is at stake. What about our liberty to walk the streets." Brown objected. During the bench conference his attorney stated, "Your Honor, here we are again. Same song, third verse this time around. I'm not going to ask for a mistrial because to do so would simply allow the State to appeal it. I'm just going to ask for a limiting instruction." The trial court sustained the objection and cautioned the prosecutor not to go into crime in the community. The judge told him he could talk about the victim's rights. The prosecutor said that he did not talk about the community's rights but that he was only talking about the victim and his family. The court told him that he could only talk about the facts of this case. The following then occurred:
BY MR. MCCULLOUCH: Given the Court's and the defense counsel's obvious thought that this prosecutor is not doing an adequate job, since I'm only 30 seconds into that part of the closing argument, can my co-counsel finish the argument?
BY THE COURT: I think you should finish the argument. I think you've already started it. I think you should finish the argument, and I think that you should finish it within the rules. I mean, if you'd never tried a case, and I said, well, he just doesn't know; he just got out of law school, just passed the bar and not tried cases, but I believe you know you shouldn't go to the edge like that. But if that's what you choose to keep doing, and there's an objection, we're just going to have to come to the *314 bench every time. It's your choice, Counselor.
¶ 16. The prosecutor resumed:
These people have a right to feel safe in their home and not have to leave, not have to sleep on the floor. We have a rightthey have a right. That woman in the next apartment has a right not to have to worry that her child is going to get it by a bullet in our county. What's going on?
Brown objected. After bench conference, the objection was sustained.
¶ 17. Later, the prosecutor continued:
Look at [Moore and Carter's] expressions, their face, and think of the consequences of a vote of not guilty. The community says they voted him innocent. I mean, it might be not guilty, but what you're doing is saying he's innocent. That's what it means. We can't retry him after that. That's what it means. Bold. You become bold. You graduate to bigger and better things, walking tall, after something like that. Think about it. You're on trial for a crime you know you committed. You get off. What are you going to do next time?

A. "Send a message" argument
¶ 18. We find the prosecutor employed impermissible "send a message" arguments in closing. The supreme court has repeatedly condemned the use of "send a message" arguments and warned prosecutors accordingly. See, e.g., Payton v. State, 785 So.2d 267, 270 (¶¶ 11-12) (Miss.1999); Evans v. State, 725 So.2d 613, 675 (Miss.1997); Wilcher v. State, 697 So.2d 1123, 1139 (Miss.1997); Hunter v. State, 684 So.2d 625, 637 (Miss.1996); Williams v. State, 522 So.2d 201, 209 (Miss.1988). "The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys." Williams, 522 So.2d at 209.
¶ 19. In analyzing this error it is necessary to examine the surrounding circumstances and be careful not to take a statement out-of-context. Id. For this purpose, we consider any comments made by defense counsel as well. Ishee v. State, 799 So.2d 70, 75(¶ 14) (Miss.2001). We note that Brown's attorney did not make any comments which could be said to have invited this improper argument.
¶ 20. While this is not per se reversible, a "send a message" argument may on its own constitute reversible error. Payton, 785 So.2d at 271(¶ 14). In Payton, the court reversed "because of the prejudice against Payton evidenced by his more severe sentence." Id. at 272(¶ 15). Payton and his co-defendant were tried together for the same crimes. Id. at 268-69 (¶¶ 1-4). The "send a message" argument was only used toward Payton. Id. at 270(¶ 8). Payton received two life sentences, and the jury declined to give his co-defendant a life sentence on any count. Id. at 269(¶ 3). The error also combined with another to deprive Payton of a fair trial. Id. at 272(¶ 15).
¶ 21. The supreme court recently clarified this issue, i.e., when a "send a message" argument will constitute reversible error. Spicer v. State, 921 So.2d 292 (Miss.2006). In order to find reversible error, the court must determine (1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused's rights. Id. at 318(¶ 55).
¶ 22. Here, the prosecutor's statements were improper attempts to arouse the jury's fear and indignation about the irrelevant *315 issue of overall crime in Washington County. The statements called on the jury to just say no to crime rather than to vote on Brown's guilt. The jury's job was to decide whether or not Brown was guilty beyond a reasonable doubt. Any other matter was beside the point. Furthermore, the prosecutor encouraged the jury to vote based on what the community will think, insinuating that a vote for Brown was a vote against the community.
¶ 23. As for the prejudice prong of the test, Spicer held that we may only affirm if it is "clear beyond a reasonable doubt, that absent the prosecutor's comments, the jury could have found the defendant guilty. This goes beyond a finding of sufficient evidence to sustain a conviction." Id.
¶ 24. Brown argues that given the weakness of the State's case, it is doubtful that the jury, absent these comments, would have found him guilty, because the State distracted them from considering the fact that it had such a weak case. Given Brown's immediate history of attempted criminal acts against this same family, the fact that Ramonda, his own witness, admitted that he had threatened her family, and the fact that he bragged about shooting Moore, we cannot say Brown was prejudiced by the prosecutor's errors.
¶ 25. Nevertheless, we are compelled to admonish the State and the prosecutor, in particular, that the State is not to take harmless error analysis as a license to use "send a message" arguments. Payton, 785 So.2d at 271(¶ 14). "The prosecutor's actions flew in the face of well-established court rules, as well as previous warnings from this Court." Id. His repeated actions also evidenced a contempt for the trial court, which repeatedly ordered him to refrain from such arguments. "If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt." Livingston v. State, 525 So.2d 1300, 1308 (Miss.1988). "One time is too much. This means any time in any case, after the first time." Id. at n. 3. For approximately twenty years, the appellate courts of this state have warned that prosecutors may be sanctioned for such conduct. See, e.g., id. This includes sanctions at the trial court level as well as the appellate level. Payton, 785 So.2d at 271(¶ 14). The entire costs of a new trial will be assessed to the prosecutor, personally, where reversible unprofessional conduct occurs. Id. "[C]osts of appeal and preparation of the record should be assessed against the prosecuting attorney." Id.
[C]ontumacious refusal to follow precedents should be treated for what it is, contempt, and sanctions entered accordingly. If an apparently conscious prosecutor error does not require reversal under present law, an appellate court could affirm the conviction but also remand the issue of contempt for a hearing as to whether the error was wilful.
Alexander v. State, 736 So.2d 1058, 1065(¶ 22) (Miss.Ct.App.1999) (Southwick, J., concurring). Indeed, Judge Southwick's position in Alexander was adopted by the supreme court in Payton. See Payton, 785 So.2d at 271-72 (¶¶ 13-15). In Payton, the court concluded, "In the future, where sufficient evidence exists to show that a prosecutor is persistently ignoring our admonitions against use of the `send a message' argument, we will not hesitate to sanction him with the costs of a new trial where necessary." Id. at 272(¶ 15).
¶ 26. We do not believe that the only sanction available is the assessment of the costs of a new trial. Indeed, immediately *316 prior to the language just quoted from Payton, Justice Sullivan included the following rationale for the entry of a personal sanction against a prosecutor:
As Justice Banks stated in his separate opinion in Wells v. State, 698 So.2d 497, 519 (Miss.1997), "it is high time that the bench and bar take seriously our admonitions about such improprieties. Harmless error analysis should not be considered as a license to transgress the rules of fair argument that are repeatedly promulgated by this Court." [citation omitted]. In his dissenting opinion in Wells, Justice McRae also recommended sanctions for the district attorney's continued misconduct:
... While no defendant is guaranteed a perfect trial, each defendant is guaranteed a fair trial. In addition, as the majority notes, the prosecutor's actions flew in the face of well-established court rules, as well as previous warnings from this Court.
If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt. This Court will not look for some reason to excuse such action of a prosecuting attorney, even though a new trial would be expensive to the people of the county. Such expenses, fault and blame should be placed at the door of the person who is responsible for it.

Livingston v. State, 525 So.2d 1300, 1308 (Miss.1988) (footnote and citations omitted). Further,
it is not beyond the authority of this Court to assess the entire costs of a new trial to the attorney whose conduct made the trial necessary in those cases where [a reversal for unprofessional conduct] occurs. Personal liability for this cost may well be imposed by this Court in the future and it will be done with an even hand, applied both to the private attorney and the attorney representing the State.

Stringer v. State, 627 So.2d 326, 330 (Miss.1993). Accordingly, as a sanction, the costs of the appeal and preparation of the record should be assessed against the prosecuting attorney....

Wells, 698 So.2d at 520-21 (McRae, J., dissenting). In the future, where sufficient evidence exists to show that a prosecutor is persistently ignoring our admonitions against use of the "send a message" argument, we will not hesitate to sanction him with the costs of a new trial where necessary.
Payton, 785 So.2d at 271-272(¶ 14) (emphasis added). We are of the opinion that this language answers the questions posed by the dissent. Indeed, the supreme court in Payton did not question whether it had personal jurisdiction over an attorney practicing in the courts of this state and certainly did not establish a procedure where only the trial court could enter a sanction. Presiding Justice Sullivan wrote that "we will not hesitate to sanction him" and even discussed the prospect of assessing the costs of appeal as an appropriate sanction.
¶ 27. We read this language from Payton to give this Court wide latitude to deal with the prosecutor's conduct in this case. Indeed, since we do not reverse and remand for a new trial, there is no reason to assess costs of a new trial. However, since Rule 36 of the Mississippi Rules of Appellate Procedure give this Court discretion on the assessment of costs of the appeal, we hold that the prosecutor Brad *317 McCullouch be personally assessed with the costs of this appeal. As such, we hold that McCullouch is ordered to reimburse Washington County for such costs within thirty days of the issuance of the mandate. Evidence of such payment shall be tendered to the Clerk of this Court within forty-five days of the issuance of the mandate. Failure to pay shall result in contempt proceedings before this Court.

B. Shifting burden of proof
¶ 28. Finally, we look at the fact the prosecutor attempted to shift the burden of proof onto Brown by blaming the lack of witnesses on him. The trial court sustained the objection and told the jury it was improper. This is not the only advice the trial court gave on the matter. The prosecutor, during cross-examination of Brown, asked Brown why his alibi witnesses were not there. Brown explained he provided their names and addresses to police and was assured the police would get statements from them. The officers admitted they did not get in touch with the alibi witnesses. Brown also explained that the alibi witnesses were there the first two times trial was scheduled. He explained they were fellow college students at Mississippi Valley State University and have all since moved. After objections, the court admonished the prosecutor and explained to the jury that Brown was not required to produce these witnesses. Taken together, we find that Brown's explanation and the judge's comments cured any prejudicial effect.

CONCLUSION
¶ 29. We affirm. The verdict was not against the overwhelming weight of the evidence, and there was no reversible prosecutorial misconduct.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE TO SERVE TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH NINE SUSPENDED, AND FIVE YEARS SUPERVISED PROBATION, AND CONVICTION OF COUNT II SHOOTING INTO A DWELLING HOUSE AND SENTENCE TO SERVE FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR SUSPENDED, AND FIVE YEARS SUPERVISED PROBATION, WITH SENTENCES TO RUN CONCURRENTLY AND FINE OF $1,000 IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY, AND THE COURT ORDERS THAT PROSECUTOR BRAD MCCULLOUCH, INDIVIDUALLY, SHALL REIMBURSE WASHINGTON COUNTY FOR ALL COSTS OF THE APPEAL WITHIN THIRTY DAYS OF THIS MANDATE.
LEE, P.J., BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J., AND CHANDLER, J. SOUTHWICK AND IRVING, JJ., NOT PARTICIPATING.
KING, C.J., Dissenting:
¶ 31. I take issue with the majority's assessment of costs in this case. The majority assesses the cost of this appeal to Washington County and then orders that the prosecutor, Brad McCullouch, personally reimburse those costs to Washington County within thirty days.
¶ 32. As the reason for its actions in assessing costs, the majority holds that the trial conduct of the prosecutor, Brad McCullouch, was inappropriate and that *318 these costs should be imposed upon him personally as a sanction. The majority finds as sanctionable conduct McCullouch's closing arguments in which he repeatedly used a "send a message" argument, even after being admonished for doing so by the trial court judge, and repeatedly attempted to shift the burden of proof to the defendant.[1]
¶ 33. At this time, I do not speak to the merit, or lack of merit, of imposing sanctions upon McCullouch and requiring that he personally pay costs as a sanction, but rather speak to the impropriety of the process by which the majority has chosen to accomplish this. The majority claims that assessing the costs of appeal to McCullouch is a permissible action under the terms of Rule 36 of the Mississippi Rules of Appellate Procedure. I do not read Rule 36 to support that action. Rule 36 provides:
(a) To Whom Allowed. Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the Supreme Court or the Court of Appeals. If a judgment is affirmed, costs shall be taxed against the appellant unless otherwise ordered. If a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered. If a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court which decided the case.
(b) Costs For and Against the State of Mississippi. Costs may be awarded for or against the State of Mississippi or any of its agencies, or officers, or political subdivisions unless otherwise provided by law.
M.R.A.P. 36 (emphasis added). The Comment to the rule states that subdivision (b) "reflects the general state rule that the state and its agencies are liable for costs unless a statute provides otherwise. Without such liability, court officials would have no source from which to collect costs."
¶ 34. The authority of Rule 36 for the taxation of costs extends only to taxation against those persons who are parties to an action. It does not extend to the taxation of costs to persons who are not parties to the action. This reading of Rule 36 would seem consistent with the decision of our Supreme Court in Northern Elec. Co. v. Phillips, 673 So.2d 1384, 1385 (Miss. 1996) (holding that "[o]ur rules clearly create a presumption favoring the award of costs to the prevailing party" (emphasis added)). The prosecutor, Brad McCullouch, is not a party to this action and, in my judgment, is therefore not subject to the taxation of costs pursuant to the authority of Rule 36.
¶ 35. It is possible that costs may be imposed upon Brad McCullouch as a sanction for inappropriate conduct. But I would suggest that because the conduct complained of occurred in the trial court, the issue of sanctions should be referred to the trial court. The trial court was present and witnessed the events of which this *319 Court complains. The trial court, which witnessed the actions of Brad McCullouch, apparently did not entertain any notion to sanction McCullouch for his actions. Whether this was because the trial court did not find the conduct to be of a quality to require sanctions or for some other reason is not known. However, the trial court is in the best position to evaluate the actions of McCullouch and determine whether sanctions are appropriate. We recognize that the trial court, which has the advantage of viewing the conduct first hand and in real time, is in a better position to judge the impact of such conduct upon the administration of justice. Because the trial judge has that advantage, this Court generally defers to the discretion of the trial court in these circumstances. See generally Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990) (holding that "[g]enerally speaking, contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are."). For some unexplained reason, this Court now seeks to disregard the deference which should be, and is normally, accorded to the trial court and to, without notice or an opportunity to be heard, sua sponte impose a monetary sanction against Brad McCollouch.
¶ 36. However, should this Court insist upon its imposition of sanctions on Brad McCullouch personally, it must first obtain personal jurisdiction over him. This would require the issuance of an order for Brad McCullouch to appear before this Court and show cause why this Court should not personally sanction him for his conduct in the trial court. Any sanctions for the actions, at which the majority takes offense, may only be imposed upon Brad McCullouch after notice and an opportunity to be heard on the matter. To impose sanctions by any other method, no matter how well intended, is patently offensive to due process and makes the conduct of this Court no less repugnant than the conduct which it seeks to sanction. See McGuire v. Sigma Coatings, Inc., 48 F.3d 902 (5th Cir. 1995) (holding that in-house counsel for the appellee could not be sanctioned by the trial court for destroying documents that may have been subject to discovery because in-house counsel was not an attorney of record, nor was he subject to the personal jurisdiction of the trial court without a show cause order or some other form of notice); In re: George Dunbar Prewitt, 280 F.Supp.2d 548 (N.D.Miss.2003) (holding that a magistrate judge could not issue an order barring Prewitt from the courthouse on the grounds that he posed a security risk without first establishing personal jurisdiction over Prewitt by serving him with process and without satisfying the requirements of due process by allowing Prewitt the opportunity to defend the allegations against him prior to the entry of the order).
¶ 37. The Supreme Court first raised the prospect of sanctions under these circumstances in Stringer v. State, 627 So.2d 326 (Miss.1993). In Stringer, the court stated,
We take this opportunity to caution the bench and bar of a growing number of reversals caused by inefficient, ineffective or unprofessional conduct by counsel. Retrials of criminal proceedings are extremely costly to the taxpayers of this State. It is not beyond the authority of this Court to assess the entire costs of a new trial to the attorney whose conduct made the trial necessary in those cases where this occurs. Personal liability for this cost may well be imposed by this Court in the future and it will be done with an even hand, applied both to the private attorney and *320 the attorney representing the State. This Court is increasingly unwilling to cast the burden of incompetence on innocent taxpayers and considers this notice to the bench and bar that in the future we may not do so.
Id. at 330. The rationale for the threat of imposition of sanctions by the Stringer court was simple. The State should not have to pay twice to accomplish that which it would have achieved the first time, save for the misconduct of the prosecutor.
¶ 38. The majority affirms Brown's conviction and sentence; thus, there appears to be no danger that the state will pay twice to obtain that which it would have achieved the first time save for the misconduct of the prosecutor. It would then appear that any punishment of McColluch would have to be for contempt of court. The conduct which the majority seeks to punish occurred in the trial court. None of the questioned acts of conduct by McColluch occurred in this Court. Therefore, if the punishment is for contempt of court, it should be remanded to the trial court to make that determination.
¶ 39. In an effort to respond to the questions posed in this dissent, the majority inserts quotes from several cases. It would appear that the majority either misreads those cases or misses the issue raised in this dissent. The cases which the majority references merely reiterate the Court's position that it has the authority to impose sanctions.
¶ 40. Let me be perfectly clear. I do not question the authority of this Court to impose sanctions in a proper case. I do question the process by which those sanctions may be imposed. Without exception, none of the cases cited by the majority addresses the issue of the process to be used in the imposition of sanctions. The question of process was not addressed in those cases because there was no serious consideration given to the immediate imposition of sanctions. The majority would read this failure to discuss a process for the imposition of sanctions to give it unfettered authority to impose sanctions at any time and in any manner in which it so chooses. To apply that type of reading to those cases is inconsistent with the very basic notions of due process and fundamental fairness which are the foundation of our system of justice and which we, as judges, are required to embrace.
¶ 41. For these reasons, I respectfully dissent.
MYERS, P.J., AND CHANDLER, J., JOIN THIS OPINION.
NOTES
[1] McCullouch first employed the "send a message" argument in his closing statements by saying, "We've got to do something about the crime in this county. It is epidemic proportion." The trial court sustained an objection by defense counsel. Immediately thereafter, McCullouch continued with his "send a message" argument. Defense counsel repeated his objection, and when both attorneys approached the bench, McCullouch insisted that the Mississippi Supreme Court had approved delivering "send a message" arguments in closing statements. The trial court disagreed with McCullouch's assertion and sustained the objection. McCullouch went on to give "send a message" statements at least two more times during closing arguments, incurring sustained objections each time.